Nash, J.
 

 The plaintiff places his claim to relief on two grounds ;
 
 first,
 
 that Langdon, the defendant, availing himself of the confidence which he knew the plaintiff reposed in his skill and integrity, and taking advantage of his ignorance, induced him to believe, that the paper, called the blue paper, contained a correct estimate of the debts due from the firm and those due to it, whereas the former turned out to be much larger than expected, and that the defendant knew such to be the fact, and that many of the debts represented as due the firm had been received before that time by Langdon himself. And,
 
 secondly,
 
 that if Langdon did not know the extent of the debts due from the firm, yet it was a mutual ignorance of matters of fact, entitling the plaintiff to have the agreement rescinded. We think that upon neither ground is the plaintiff entitled to relief. His allegation, that Langdon availed himself of the confidence he knew he reposed in him, is re
 
 *483
 
 pelled by the evidence in the case. To Samuel Whitaker, his own witness, he at different times stated, “he had much uneasiness and anxiety as to Langdon’s connection with the firm, that he could not bring him to a settlement, nor could he understand how he was managing his business.” Whatever confidence therefore he might have had in the defendant, when the partnership was formed, he had lost it before the arrangement was made; he evidently had his fears excited, and was put upon his guard by them. Now is there any thing in the case to show us, that any fraud was practiced by Langdon. The books have been submitted to our inspection; Mr. Langdon is represented as a good accountant, and that he presented the mode in which the books should be kept. If' they were left in the manner directed by him, they furnish little evidence of any knowledge on the subject. But it is shown by the evidence, that for the twelve months next preceding the sale to the plaintiff, the defendant had been absent and had nothing to do with the management of the business. The statement contained in the blue paper was.drawn up by him, from the books, as testified by Thomas G. Whitaker, the other partner,, and from information furnished by him and the plaintiff. In making that statement, the debts of the firm were stated by Langdon at $6,000, and so ignorant were the parties of the true situation of the business, that $1,500 were, at the suggestion of Whitaker, added on to the amount of the indebtedness of the firm, at a rough guess, and $600 for bad debts. This was all done in the presence of the plaintiff:, Crowder. It has turned out that $1,500 was not a sufficiently large allowance, but that the debts were nearly $10,000. The plaintiff, though not’skilled in book keeping, and though an illiterate man, certainly had capacity sufficient to see, that none of them knew the extent' of the indebtedness of the firm ; and that he was incurring great risque. With this knowledge, such is his anxiety to get rid of Langdon as a partner, that, contrary to the advice of Whitaker, upon whom, as a- connexion, and as a partner, he might surely rely, he would make his purchase. When Langdon first proposed to,
 
 *484
 
 out to the plaintiff, Whitaker, upon his
 
 advice being ask-
 
 e(j ,<( adyised him to take more time and not to make a eon-1 , , tract of .the kind, in haste.” The next morning the plaintiff pr0p0Se¿ to hjmj t0 j0¡n jn the purchase, which he declined, when the-plaiutiff said, he had made up his mind to make .the purchase. We cannot then say that Langdon was, in the transaction, guilty of any fraud, or that he used any deception or artifice to induce the plaintiff to make the purchase. But it is argued, if there be no actual fraud, there is implied fraud, .that when a person makes a false representation through mis.take, when he might have informed himself, he,shall be bound. Without
 
 going into
 
 an examination of the cases, to which our ¡attention has been drawn, we do not think this case comes within the principle. Here the defendant is in fact guilty of ,no misrepresentation. He had had nothing to do with the business for twelve months, and had been absent from the place- where it was carried on. The books give him no information ; are silent on the subject; neither can his copartners or clerks, one of whom is the plaintiff’s son, assist him; at a venture he puts down the debts of the firm at $6,000; the acting partner tells him that will not answer, add $1,500 more: this is done, and in the presence of the plaintiff, who has all the time been living in the neighborhood of the store, was there every week or two, who had free access to the books, and frequent conversations with Whitakér, the acting partner, and his friend and near relation. The sum of $7,-500, as being the amount of the indebtedness of the firm, is no where proved to have been asserted by the plaintiff, and when .the plaintiff asks Whitaker and Langdon if the statement of the amount of the debts is correct, he is answered, .“according to the data they had to go upon it was substantially so.” There is then in fact no representation as to their amount. It was a mere matter of opinion, or a fact, equally open to the inquiries of both parties, both possessing equal means of information, and upon which, it is evident from the testimony of Samuel Whitaker, the plaintiff did not rely upon the opinion .of Langdon, nor do we perceive in.'.the- facts
 
 *485
 
 proved any effort on his part to mislead the plaintiff, for the misrepresentation may as well be by deeds or acts, as by vi . m 111 • « • M| .u words, by artifices as well as by positive assertion, 3 Bl. C. 165. 2 Kent. Con. 484. 2d Story Eq. 201, 2. We do not say the fact is not so, but that there is no evidence to prove it. But before the principle can be brought to bear upon Lang-don, it is necessary to show, according to the case of
 
 Pearson against
 
 Morgan, 2d Brow. C. C. 354, that he might have had notice of the truth or falsehood of the statement. To what source of information could Langdon have applied to get this notice
 
 7
 
 Did hé not apply to that, from which alone he could now derive it
 
 7
 
 There is no written memorandum of the debts within his reach, and those, who ought to have known, were as ignorant as himself. The principle then does not apply to him. One remarkable feature in this case is, that the plaintiff, who claims to get rid of his contract with Langdon, because the debts were so much larger than what the blue paper represents them, purchases out his copartner, Thomas
 
 &.
 
 Whitaker, on the 30th day of August, 1841, upon precisely the same terms. The purchase from Langdon was made 27th March, 1839, one year and four months before the purchase is made from Whitaker. Yet he gives Whitaker the amount of his capital, and guarantees him from all liability to pay the debts of the firm. If the plaintiff has made a hard bargain or a bad one, we cannot relieve him. It appears to us, that so far from being anxious to get out of mercantile business, he had an uncommon desire to get into it. He goes into the firm, owning the one-fourth of the stock, and winds up by purchasing the whole. Neither upon the ground of mutual error, is the plaintiff entitled to relief. It was a speculation on both parts. The plaintiff did not know the amount of the outstanding debts, nor did the defendant. The latter agrees, if the plaintiff will give him a certain sum, he will sell his interest in the firm. Suppose, instead of the deficiency found to exist, there had proved to be a large profit bqyond that stated in the blue paper, could the defendant have been heard to say the contract must be rescinded ; the profits have
 
 *486
 
 turned out much larger than he expected
 
 1 The
 
 general rule uncluest'ona^y is, that an act done or a contract made under a mistake or ignorance of a material fact, is relievable in Eqst gt0ry Eq. 155. But where the means of information are alike open to both parties, and when each is presumed to exercise his own judgment in regard to extrinsic matters, Equity will not relieve. The policy of the law is to administer relief to the vigilant, and to put all parties to the exercise of a proper diligence. In like manner, where the fact is equally unknown to both parties, or where each has equal and adequate means of information, or when the fact is doubtful from its own nature, in any such case, if the party has acted with entire good faith, a Court of Equity will not interpose. 1st Fonb. Eq. B. 1, ch.
 
 2,
 
 s. 7, n. v. 1st Pow. on Con. 200. 1st Mad. C. Pr. 62, 4. 1st Story Eq. 163. Where each party is equally correct and there is no concealment of facts, mistake or ignorance is no foundation for Equitable interference. We have said, there is no ground to allege fraud against the defendant. Here the fact of the extent of the indebtedness of the firm was unknown to the parties; it was, from the circumstances of this case, doubtful in its extent, and each party had equal means of information. The rule of
 
 caveat emptor
 
 must apply. If, however, we were satisfied, that the plaintiff acted upon the statement contained in the blue paper, as the known and declared basis on which he contracted, we should be inclined to grant him relief. But it is not as manifest, he did not, or rather he did not act upon it, as containing the ascertained facts of the c.ase. He could not have done so, because he was present and saw and knew upon what data it was framed, and that its statements were the result of vague surmises.of all parties. Further, that-he did not rely on it is shown from the fact, that he asked the advice of Whitaker what he should do. The paper, if correct, showed a clear profit of near three thousand dollars: if, therefore, he wished to purchase, and relied upon the paper, he would have needed the advice of no one, and, further, when he consummated the contract, he did so, in the absence of the paper, after having called' for it.
 

 
 *487
 
 Another ground of relief claimed by the plaintiff is, that the defendant agreed to correct all errors. There is no evidence to us of any errors in the contract. The.defendant intended to sell his interest in the firm; the plaintiff to buy that interest, whether it was much or little.
 

 Per Curiam, Bill dismissed with costs.