In re Stephen J. KLEMEN, Jr., Debtor.

Frank O. WETMORE II, Trustee, Plaintiff,

v.

MOSE–ARK ENTERPRISES, INC., Defendant.

Bankruptcy No. 80 B 2556.
Adv. No. 81 A 3038.

United States Bankruptcy Court, N. D. Illinois, E. D.

April 9, 1982.

Frank O. Whetmore, II, of Winston & Strawn, Chicago, Ill., for trustee.

Allen C. Engerman of Engerman, Erlich & Berman, Ltd., Chicago, Ill., for defendant.

### ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Trustee's Amended Complaint for money judgment and approval of a sale of property, and the Defendant's Answer thereto, and the parties appearing by their respective attorneys, and

The Defendant averring in open Court that there are no issues of material fact to be resolved, and Defendant requesting in open Court that the Complaint be disposed of based on the legal Memoranda submitted, this Court therefore deeming the matter to have been presented upon Cross-Motions for Summary Judgment, and

The Court having examined the pleadings filed in this matter and having received and examined the Memoranda of Law submitted by the parties in support of their respective positions, and having heard the arguments of counsel, and the Court being fully advised in the premises;

The Court Finds:

1. On February 29, 1980 an involuntary bankruptcy petition was filed against Stephen J. Klemen, Jr., Debtor, under chapter 7 of the Bankruptcy Code.

2. On December 15, 1980 Frank O. Wetmore II, Trustee for the estate of Stephen J. Klemen, Jr., filed an Application with this Court for leave to sell a tract of real property referred to as the Bentonville Hog Farm.

3. In said Application, the Trustee indicated that he had received an offer from Mose-Ark Enterprises, Inc. for the purchase of the Bentonville Hog Farm for the sum of $135,000.00 cash. The Trustee further stated that in his opinion $135,000.00 is the reasonable value of the Bentonville Hog Farm. The Trustee's Application requested that the Court enter an order authorizing and directing the Trustee inter alia to: 1) serve notice upon the parties and publish notice as the Court deems appropriate for date of hearing upon this Application and the sale of the Bentonville Hog Farm; 2) convey to Mose-Ark Enterprises, Inc. or such higher bidder as may be the successful bidder thereon, the Bentonville Hog Farm and equipment thereon for payment in cash of the bid price.

4. Pursuant to Court order, the Bentonville Hog Farm was offered for sale at public auction in open court on January 12, 1981, but there were no bidders. Accordingly, on January 19, 1981 this Court ordered that "the sale of the Bentonville County Hog Farm to Mose-Ark Enterprises, Inc. for $135,000.00 is hereby approved." The Court further ordered "that the Trustee be, and he is hereby authorized and directed to accept the offer of Mose-Ark Enterprises, Inc."

5. On September 10, 1981, Frank O. Wetmore II, Trustee, filed a Complaint against Mose-Ark Enterprises, Inc. On September 11, 1981, the Trustee filed an Amended Complaint, wherein he alleges that he has stood prepared to close the Bentonville Hog Farm transaction, but Mose-Ark Enterprises, Inc. has failed and neglected to close said transaction. The

Trustee requests alternative relief: 1) that judgment be entered in favor of the Trustee and against Mose-Ark Enterprises, Inc. in the amount of $129,500.00 (the difference between $135,000.00 and the $5,500.00 earnest money deposited by Mose-Ark Enterprises, Inc. and held by the Trustee); or 2) that the Court approve a sale of the property to another in mitigation of damages and enter judgment in favor of the Trustee and against Mose-Ark Enterprises, Inc. in the amount of any deficiency.

6. This Court approved the sale of the Bentonville Hog Farm to James W. Stratton for the sum of $110,000.00. Accordingly, the Trustee's request for a deficiency judgment against Mose-Ark Enterprises, Inc. is the only remaining issue to be resolved by this Court.

The Court Concludes and Further Finds:

1. On October 29, 1981, Mose-Ark Enterprises, Inc. made a written offer to purchase the Bentonville Hog Farm for $125,000.00 cash at closing (Exhibit 1 to the Trustee's Complaint). The writing consists of a form document entitled "Real Estate Contract (Offer and Acceptance)." Paragraph 9 of the document states that the closing date is to be "on or about 90 days from acceptance." Paragraph 15 states that the offer expires if not accepted within 10 days. The document was signed by Eldon Mosler, President of Mose-Ark Enterprises, Inc. The document also provides for the signature of the seller, but has never been signed by the seller. In addition, at the bottom of the document is an unnumbered statement stating as follows:

> "This is a legally binding contract when signed by both buyer and seller. If not understood seek legal advice."

By letter dated November 12, 1980, Mose-Ark Enterprises, Inc. amended its Offer to $135,000.00 cash at closing. By letter dated January 12, 1981, Mose-Ark Enterprises, Inc. deposited $4,500.00 as additional earnest money.

2. Mose-Ark Enterprises, Inc. contends that it is not obligated to close pursuant to the terms of the written offer. In this respect, Mose-Ark Enterprises, Inc. states that the document sought to be enforced does not satisfy the Statute of Frauds nor the document's own requirements for enforceability.

■ Mose-Ark Enterprises, Inc. notes that Illinois courts have held that the Statute of Frauds requires that the writing contain the name of the seller. The October 29, 1980 document does not contain the name of the seller. However, the letter dated January 12, 1981 from the President of Mose-Ark Enterprises, Inc. to Frank O. Wetmore II is an amendment to the original offer and does contain the name of the seller. Accordingly, the Statute of Frauds' requirement is satisfied. *Thompson v. Wiegand,* 9 Ill.2d 63, 66, 136 N.E.2d 781, 783 (1956); *Crum v. Krol,* 99 Ill.App.3d 651, 654, 54 Ill.Dec. 864, 867, 425 N.E.2d 1081, 1084 (1981).

■ Mose-Ark Enterprises, Inc. further contends that despite any Statute of Frauds deficiencies, the Trustee's failure to sign the document constitutes a failure to accept the offer to purchase and renders the alleged contract unenforceable. Mose-Ark Enterprises, Inc. argues that the terms of the offer require that the offer only be accepted by writing. Mose-Ark Enterprises, Inc. relies on the statement at the bottom of the document which states:

> "This is a legally binding contract when signed by both buyer and seller. If not understood seek legal advice."

This Court does not read the aforesaid provision as prescribing that acceptance be by signature only. Its purpose, rather, is to alert the unwary and legally unsophisticated.

■ Since the offer does not require a particular manner of acceptance, the offer could have been accepted by conduct indicating assent to the offer. 12 Ill.L. & Prac. § 38 at 210 (1955). *See, e.g., Plummer v. Pennsylvania Railroad,* 37 F.2d 874 (7th Cir. 1929); *Arduini v. Board of Education,* 93 Ill.App.3d 925, 49 Ill.Dec. 460, 418 N.E.2d 104 (1981). "Though assent must be manifested in order to be legally effective, it

need not be expressed in words .... The modern law rightly construes both acts and words as having the meaning which a reasonable person present would put upon them in view of the surrounding circumstances." 1 Williston, *Contracts* § 22A (3d ed. 1957). In the case *sub judice*, it was contemplated by the offeror that acceptance of the offer would involve efforts by the Trustee to obtain Court approval by filing an Application requesting the Court to enter an Order authorizing and directing the Trustee to accept the offer and convey the property. The Trustee did in fact file such an Application with the Court. Further, Mose-Ark Enterprises, Inc. had notice of that fact and also could reasonably have expected that if no higher offers were received the Trustee would be ordered to convey the property to Mose-Ark Enterprises, Inc. Notwithstanding, Mose-Ark Enterprises, Inc. did not indicate any intention to withdraw their offer. To the contrary, on January 12, 1982, the date for hearing on the Application and sale, Mose-Ark Enterprises, Inc. deposited an additional $4,500.00 as earnest money. In view of all of the circumstances, this Court finds that the offer of Mose-Ark Enterprises, Inc. for $135,000.00 cash was accepted by the Trustee.

Finally, Mose-Ark Enterprises, Inc. maintains that no enforceable contract exists because of the provision in paragraph 15 of the subject document. Paragraph 15 states that the offer expires if not accepted within 10 days. The offer is dated October 29, 1980 and the Trustee's Application was not filed until December 15, 1980. These facts, however, are not dispositive.

■ Provisions of a contract may be waived by subsequent acts of the parties. In the case *sub judice*, Mose-Ark Enterprises, Inc.'s actions with regard to the subject transaction constituted a waiver of the 10-day provision in paragraph 15. On November 12, 1980, more than ten days after the original offer, Mose-Ark Enterprises, Inc. "amend[ed] their offer of October 29, 1980 to raise the offering price to $135,000.00 cash at closing, all other provisions to remain the same." They did not, as would

have been more appropriate and consistent with paragraph 15, make a new offer. Moreover, on January 12, 1981, approximately 2 months after the November 12, 1980 amended offer, Mose-Ark Enterprises, Inc. again indicated a waiver of paragraph 15. It treated the October 29, 1980 offer, as amended by the November 12, 1980 offer, as being in full force and effect. The letter stated as follows:

"I am enclosing Ch. # 3201 in the amount of $4,500.00 as additional earnest money on agreements to purchase the Benton Co. Hog Farm in the amount of $135,000.00 due to close on or before April 12, 1981."

This Court concludes that a validly enforceable contract between the Trustee and Mose-Ark Enterprises, Inc. existed for the sale of the Bentonville Hog Farm in the amount of $135,000.00 cash.

3. Mose-Ark Enterprises, Inc. contends that if the Court concludes that an enforceable contract exists, the Trustee's damages are limited to retention of the $5,500.00 earnest money deposit. Mose-Ark Enterprises, Inc. notes paragraph 5 of the contract which provides as follows:

5. EARNEST MONEY: Buyer herewith tenders a check for $1,000.00 as earnest money, which shall apply on purchase price or closing costs if this offer is accepted. The sum shall be deposited by Agent and if offer is not accepted or if title requirements are not fulfilled, it shall be promptly refunded to Buyer. If, after acceptance, Buyer fails to fulfill his obligations, the earnest money shall become liquidated damages. WHICH FACT SHALL NOT PRECLUDE SELLER OR AGENT FROM ASSERTING OTHER LEGAL RIGHTS WHICH THEY MAY HAVE BECAUSE OF SUCH BREACH.

■ The Trustee, however, maintains that he is entitled to damages in the amount of $25,000.00 ($135,000.00 minus the $110,000.00 received upon sale to the next highest bidder). He argues that his recovery is not limited to the $5,500.00 because the contract provides for liquidated damages at the option of the seller.

There are indeed instances in which contracts have provided for optional liquidated damage provisions and courts have upheld the optional nature of these provisions. The Trustee in his Memorandum cites two such cases. *Gryb v. Benson*, 84 Ill.App.3d 710, 40 Ill.Dec. 423, 406 N.E.2d 124 (1980); *Sampson v. McAdoo*, 47 Md.App. 602, 425 A.2d 1 (1981). Neither of these cases, however, involve contracts containing the same or similar wording as the instant liquidated damage provision. Each of the cited cases clearly and explicitly expresses that the forfeiture of the earnest money is at the *option* of the seller. Paragraph 5 of the subject contract clearly states that "the earnest money *shall* become liquidated damages" (emphasis added). *Blacks Law Dictionary* 353 (5th ed. 1979) defines liquidated damages as "the amount of damages [that] has been expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." The concluding statement in paragraph 5 provides that the seller is not precluded from "asserting *other* legal rights which they may have because of such breach" (emphasis added). "Other legal rights" must logically and consistently be read to refer to rights of a kind and character other than the right to damages, the amount of damages having been stipulated to in the contract. Had the parties intended that the $5,500.00 earnest money be retained as liquidated damages only at the *option* of the seller, they could have so stated. Instead, they stated that "the earnest money shall become liquidated damages."

4. On January 11, 1982, this Court held a hearing on the Applications for payment of a real estate commission to George Frelk, Realtor, and Eldon Mosler, Realtor and President of Mose-Ark Enterprises, Inc. regarding the sale of the Bentonville Hog Farm.

This Court ordered that a single commission be allowed in the amount of $5,500.00 to George Frelk and Eldon Mosler. The Court ordered that the Trustee pay George Frelk his expenses from the $5,500.00 commission along with one-half of the balance of the commission. The Court further ordered that the remaining balance of the commission be retained by the Trustee pending resolution of the adversary proceeding.

On March 17, 1982 this Court entered an Order allowing George Frelk expenses in the sum of $2,476.79, and directing that the Trustee disburse said sum and the additional sum of $1,511.60 as commission to George Frelk.

The adversary proceeding having been resolved, and the Trustee's recovery against Mose-Ark Enterprises, Inc. having been limited to retention of the earnest money, it is now proper that the Trustee disburse to Eldon Mosler his share of the commission allowed in connection with the sale of the Bentonville Hog Farm, that being the sum of $1,511.60.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion of the Trustee, Frank O. Wetmore II, for Summary Judgment be, and the same is hereby granted in part and denied in part.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion of Defendant, Mose-Ark Enterprises, Inc., for Summary Judgment be, and the same is hereby granted in part and denied in part.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a valid enforceable contract for the sale of the Bentonville Hog Farm existed between the Trustee, Frank O. Wetmore II, and Mose-Ark Enterprises, Inc. for the sum of $135,000.00 cash at closing, and that Mose-Ark Enterprises, Inc. breached that contract.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Trustee's, Frank O. Wetmore II, damages are limited to retention of the $5,500.00 earnest money deposit.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Trustee, Frank O. Wetmore II, disburse to Eldon Mosler, President of Mose-Ark Enterprises, Inc., the sum of $1,511.60 as a commission allowed in connection with the sale of the Bentonville Hog Farm.