**In re LIPMAN BROTHERS, INC., Debtor.**

**Bankruptcy No. 82–00969–HL.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 16, 1983.

Christopher W. Parker, Craig & Macauley, P.C., Boston, Mass., for trustee.

Jerome E. Rosen, Lappin, Rosen, Goldberg & Levenson, Boston, Mass., for Colley Group.

### FINDINGS OF FACT AND RULINGS OF LAW ON MOTION FOR RETURN OF DEPOSIT

HAROLD LAVIEN, Bankruptcy Judge.

George A. Colley, III ("Colley") has filed a motion requesting that this Court order the trustee to return a $60,000 deposit made by Colley as part of a bid on the sale of the debtor's fish processing business in Gloucester. The notice inviting the bids stated:

[T]he original offeror and any party who submitted a timely counteroffer and deposit shall have the opportunity to submit to the Court a single new written bid in a sealed envelope. All such envelopes will be opened at the same time, and these will be the final bids permitted to any offeror.

Mr. Colley was the successful high bidder. Colley subsequently failed to complete the purchase. The trustee seeks to keep the $60,000 as liquidated damages.

Lipman Brothers, Inc., ("Lipman" or "Debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on June 1, 1982. The Debtor was in the fish and poultry processing business. The case saw many heated controversies from the beginning and the Creditors' Committee maintained a careful scrutiny of the ongoing business. In the late fall of 1982, the Debtor and the Creditors' Committee submitted competing plans of reorganization. The Creditors' Committee's

plan was to be funded by a different group of individuals, one of whom was Colley (hereinafter "Colley group"). The approval of the two disclosure statements became a long and drawn out process with each side continually raising various objections. One of the major objections to the Colley plan was the inability to show that they had the necessary financing. As the process wore on, both sides emphasized to the Court the need for haste because of the onset of the 1983 fishing season. The Colley group was forced to withdraw its plan because of inability to raise the financing. Finally, both sides agreed to hold a private sale of the fish processing plant and other assets as the best way of getting the matter resolved for the fast approaching fishing season.

As is the usual procedure in this court, a notice of intended private sale was sent to all parties in interest and any other prospective bidders which the parties knew of. The Lipman group submitted the initial bid. The Notice of Intended Private Sale and Assumption of Lease ("Notice"), as requested by the Court, included an opportunity for counter-offers to be submitted. Two counter-offers were submitted, one by Protein Products, Inc., and the other by the Colley group. Each party submitted a deposit of $60,000. The initial hearing to take sealed bids was postponed once because one bidder, Protein Products, Inc., had not been given sufficient information as to the equipment owned by the debtor.

The bidding process was completed on May 9, 1983. Sealed bids were submitted to the Court. Protein Products, Inc., withdrew its bid, the Colley group bid $1,701,001 and the Lipman group bid $1,466,113. The Colley group's bid contained five conditions. The Lipman group immediately objected since it had been made clear that any bid would only be subject to the terms and conditions of the Notice. After discussion, counsel for the Colley Group waived all of the conditions except for an extension of the closing date until May 18, 1983 from

May 13, 1983, so that it could finalize its arrangements for financing, which it assured the Court were at hand, and agreed that its deposit would be forfeited if it failed to perform. The Court allowed the extension and declared that Colley was the successful bidder. On oral motion by counsel to the Lipman Group, this Court certified to the District Court of need for immediate review pursuant to the Emergency Bankruptcy Rule[1] which review took place and the Colley bid affirmed.

When the closing date of May 19, 1983 arrived, Colley did not have the funds to complete the purchase. The Debtor agreed to a one-day extension. When Colley could not perform, the Debtor would not agree to any further extension. Colley requested that this Court order a further extension. The Lipman group stood ready to perform, but indicated that they did not know how long their financing would remain in place. More importantly, the Colley group could offer no assurances that their financing would be forthcoming even within a few days. The request for an order of extension was denied, and the Debtor was permitted to sell the assets to the Lipman group for the amount of its bid, $1,466,113.

Since the sale took place, a trustee was appointed and the case was converted to a Chapter 7 liquidation proceeding. The $60,000 deposit is now in the possession of the trustee who asserts that Colley failed to perform and pursuant to the language of the Notice, Colley is not entitled to a refund because the deposit is liquidated damages for his failure to perform.

The relevant paragraphs of the Notice provided as follows:

5. The purchaser has made a deposit in the amount of $60,000. Any person or entity making a counteroffer must make a similar deposit. THE DEPOSIT MAY BE NON–REFUNDABLE UNDER CERTAIN CIRCUMSTANCES, as is more fully described paragraph 12 below.

1. For further details, the reader is referred to the "Bankruptcy Judge's Certification of Need for Immediate Review and Findings on Bids for Private Sale" entered by this Court on May 11, 1983.

12. If any of the conditions described in the preceding paragraph has not been met, the purchaser may elect not to purchase the Assets, whereupon its deposit shall be refunded. If all these conditions have been met and the purchaser does not pay the balance of the price for the Assets, the deposit shall be retained by the debtor's estate as liquidated damages.

14. ... any higher counteroffers to purchase the Assets on the exact same terms and conditions set forth herein must be filed in writing .... Counteroffers must (a) be for a price at least $5,000 higher than the offer described in this notice (i.e., counteroffers must be for no less than $1,359,506.08), (b) otherwise be on the exact same terms and conditions as the offer described in this notice, and (c) be accompanied by a deposit in the form of a certified check, made payable to Lipman Bros., Inc., in the amount of $60,000.

15. At the hearing, the original offeror and any party who submitted a timely counteroffer and deposit shall have the opportunity to submit to the Court a single new written bid in a sealed envelope. All such envelopes will be opened at the same time, and these will be the final bids permitted to any offeror.

■ Colley first argues that paragraph 12 which provides that the purchaser loses his deposit for failure to pay the price only applies to the Lipman group, the original offeror. The notice in paragraph 14 which states that "any higher offers to purchase the assets *on the exact same terms and conditions set forth herein*" was clear enough to warn any counter-offerors that they would be held to the same terms and conditions as the original offeror. Further, after the bidding was completed and the conditions had been waived the following discourse took place between Colley's counsel and the Court:

"THE COURT: And assuming that ... your financing is not in order by the 18th, you understand you would have forfeit your $60,000 deposit?

MR. ROSEN: I would forfeit more than that. I would forfeit what little integrity I have before this Court. It would be very upsetting to me personally, apart from the $60,000.

I understand all of that your Honor." Transcript, May 9, 1983, at 39.

At that time, Colley still had the opportunity to withdraw. He did not, and his attorney acknowledged that failure to perform would result in a forfeiture of the deposit.

■ Colley also argues that because the Notice is silent with respect to requiring any deposit to accompany a sealed bid that an ambiguity was created. He argues that the Notice does not provide for any retention of a deposit once the sealed bid process began. This argument fails to acknowledge that any counteroffers had to be accompanied by a deposit. A counteroffer and deposit was the admission ticket to the sealed bid process. It would be absurd to find that once that process began, paragraphs 5 and 12 would no longer apply. The document must be read as a whole, not in separate parts. The deposit would be meaningless if it secured only tentative counteroffers and not final bids. The deposit would have been returned after the sealed bid process if Colley was not the successful bidder. Such was the case with Protein Products, Inc., who submitted a sealed bid in which it stated that it was withdrawing from the bidding process.

■ Colley next argues that the retention of the deposit by the trustee is a forfeiture which this Court as a court of equity should refuse to enforce. The law of Massachusetts is to be applied in determining the validity of the liquidated damages clause. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

■ Colley cites *A–Z Servicenter, Inc. v. Segall,* 334 Mass. 672, 138 N.E.2d 266 (1956) for the proposition that a liquidated damages clause should be unenforceable as a penalty. As set forth in that case a liquidated damages clause will be enforced where actual damages are difficult to as-

certain and where the sum agreed upon by the parties at the time of execution of the contract represents a reasonable estimate of those damages. *Id.* The clause will not be enforced where the sum is unreasonable or grossly disproportionate to the real damages. *Id.* In *A–Z Servicenter, Inc. v. Segall, supra,* the liquidated damages were the full amount of interest due for a fifteen year note. The interest due on the default was more than the principal balance of the note. In contrast, in the instant case, the $60,000 deposit is a small fraction of the total bid price. Actual damages would be the difference between the Colley bid price and the price the assets were eventually sold at, $234,887. The $60,000 liquidated damages are a reasonable estimate of those damages.

Further, it is well settled in Massachusetts that "a purchaser at a sale by auction, who has made a deposit of money under an agreement that it shall be forfeited to the use of the seller if the purchaser fails to comply with the terms of the sale, upon such failure cannot recover back the deposit." *Dennett v. Perkins,* 214 Mass. 449, 450–451, 101 N.E. 994 (1913), *see e.g., La Vallee v. Cataldo,* 343 Mass. 332, 178 N.E.2d 484 (1961); *Beck v. Doore,* 319 Mass. 707, 67 N.E.2d 479 (1946); *Donahue v. Parkman,* 161 Mass. 412, 37 N.E. 205 (1894). Colley argues that *Lange v. Farmers Federation Cooperative, Inc.,* 249 F.Supp. 544 (W.D.N.C.1966) states the law which this Court should follow. In that case, forfeiting the deposit was held to be unreasonable because the amount of the deposit exceeded the actual damages sustained. Also, there was no express agreement that the deposit would be forfeited. Here, there was an express agreement that the deposit would be forfeited and the amount is a reasonable estimate of the damages.

Finally, Colley argues that the estate suffered no damages. Clearly, the estate suffered damages for the breach, i.e., the difference between the contract price and the market price at the time of the breach. *Murray On Contracts* § 242 (2nd rev. ed. 1974). Those damages are at least $234,887,

the difference between the bid price and eventual sale price.

I find that the retention by the trustee of the $60,000 deposit is called for by the Notice. Colley's Motion for Return of Deposit is denied.