In re **GOVERNOR'S ISLAND, a North Carolina Limited Partnership, Debtor.**

**GOVERNOR'S ISLAND, a North Carolina Limited Partnership and Allen-Dukes—Jones Island, Partnership, Plaintiffs,**

v.

**Joseph M. EWAYS, Defendant.**

**Bankruptcy No. S–83–01529–5. Adv. No. S–84–0103–AP.**

United States Bankruptcy Court, E.D. North Carolina.

Dec. 28, 1984.

---

See also, Bkrtcy., 39 B.R. 417.

Peter J. Sarda, John R. Wallace, Raleigh, N.C., for Governor's Island.

A.P. Carlton, Jr., Raleigh, N.C., for Allen-Dukes—Jones Island.

B. Hunt Baxter, Jr., New Bern, N.C., for Joseph M. Eways.

## ORDER ALLOWING MOTIONS FOR SUMMARY JUDGMENT, ESTABLISHING LIABILITY, AND DETERMINING DAMAGES

A. THOMAS SMALL, Bankruptcy Judge.

This matter comes before the court upon the plaintiffs' two motions for partial summary judgment to establish liability of the defendant and to determine the amount of damages. This adversary proceeding is an action brought by the debtor, Governor's Island, a Limited Partnership, and Allen-Dukes—Jones Island Partnership, to recover over $860,000 in damages from the defendant, Joseph M. Eways, for failure to consummate the purchase of property of the estate purchased by Mr. Eways from the debtor at public auction. A hearing was held in Raleigh, North Carolina on November 8, 1984.[1]

In response to the defendant's June 15, 1984 motion to dismiss for lack of jurisdiction, this court entered an August 17, 1984 Order Denying Motion to Dismiss. In that order, the court determined that the district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and that, by an August 3, 1984 general order, the district court referred this proceeding and all other bankruptcy cases and proceedings to the bankruptcy judges of this district pursuant to 28 U.S.C. § 157(a). In its August 17, 1984 order, this court also determined that this adversary proceeding to recover damages from a defaulting purchaser of property of the estate, who purchased at a public sale held by a debtor-in-possession pursuant to 11 U.S.C. § 363, is a "core proceeding" under either 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") or 28 U.S.C. § 157(b)(2)(N) ("orders approving sale of property"). A debtor's court-sanctioned sale of property of the estate is by no means peripheral to the bankruptcy case; it is an essential part of bankruptcy case administration.[2]

---

**1.** The defendant filed a counterclaim in which he alleged that there are "severe title problems" with regard to the property sold, and that the auctioneer, as agent for the plaintiffs, deliberately misrepresented the status of title with the intent to deceive the defendant. The counterclaim asks for a return of the defendant's $184,-000 escrow deposit and damages in the amount of $20,000, which the defendant has incurred both in attempting to purchase the island, and in defending motions and suits brought by the plaintiffs against the defendant. At the hearing

on November 8, 1984, the defendant filed an application requesting entry of default against the plaintiffs for failure to reply to the counterclaim. The plaintiffs filed affidavits denying that they had been served with the counterclaim. An order has been entered this date denying the defendant's application for entry of default.

**2.** Under the Bankruptcy Act of 1898, a purchaser at a court ordered bankruptcy sale was subject to the summary jurisdiction of the bank-

Having determined under 28 U.S.C. § 157(b)(3) that this adversary proceeding is a "core proceeding," the bankruptcy court may proceed to enter final orders and judgments pursuant to 28 U.S.C. § 157(b)(1) consistent with the authority provided to bankruptcy judges by 28 U.S.C. § 151.

After a full evidentiary hearing to consider the debtor's motion to forfeit the deposit made by Mr. Eways at the public sale, the court, in an order entered on March 21, 1984, determined that Mr. Eways had unjustifiably breached his obligation to purchase the property and was liable to the debtor for damages which would be determined at a later date.[3] There is now nothing before the court to change its view of the matter. The undisputed facts which establish Mr. Eways' liability to the plaintiffs are as follows:

## FACTS

On January 14, 1984, after proper notice to all creditors as required by 11 U.S.C. § 363(b) and Bankruptcy Rules 6004 and 2002(a)(2) and (c), the debtor (a chapter 11 "debtor-in-possession" as defined in 11 U.S.C. § 1101(1)) held a sale of its real property known as "Governor's Island." The sale also included property owned by the co-plaintiffs, Allen-Dukes partnership, a chapter 11 debtor in the U.S. Bankruptcy Court for the Middle District of Georgia.

The sale was conducted by J.L. Todd Auction Company at the Ramada Inn in New Bern, North Carolina at 10:00 A.M. on January 14, 1984. Brochures were prepared and the sale was advertised in several newspapers including *The Wall Street Journal.*

The island (formerly known as "Jones Island"), located off the North Carolina coast near the town of Hobucken in Pamli-

co County, was described in the brochures as being an island containing 4800 acres.

At 10:00 A.M. on the morning of the sale, it was announced that the island was being sold subject to the rights of third parties who owned 50% of the oil and natural gas rights. (Transcript of hearing on March 19, 1984, pp. 23, 27 and 35). Also announced at that time were the facts that the debtor could not sell land under navigable water (T. pp. 24, 35 and 36), and that a 15-acre tract was being excluded from the sale. (T. p. 24). There were several questions raised at the sale concerning the debtor's ability to sell land under navigable water and considerable discussion of that issue followed. The announcements and the discussion of the navigable water rights took place prior to bidding but after the time set for the sale. (T. p. 30).

Mr. Eways, the defendant, is an 85-year old oriental rug dealer and real estate entrepreneur from Tampa, Florida. He first learned about the sale of the island from an advertisement in *The Wall Street Journal.* He did not visit the island prior to sale, did not have the title examined, did not examine maps of the island, and made no further inquiries beyond speaking by telephone to the debtor's attorney. (T. pp. 40–41). Mr. Eways also did not have his financing arranged prior to the sale (T. p. 41).

Mr. Eways drove to the sale from his home in Florida, had car trouble, and arrived at the sale ten minutes before the sale was to begin. The defendant maintains that he did not hear any announcements concerning navigable water and marshlands or any announcements concerning mineral rights. For purposes of this motion, the court finds that the defendant did not hear the announcements made at the sale.

ruptcy court to enforce the purchaser's obligation. MacLachlan, *Handbook of the Law of Bankruptcy* ¶ 298, at 351–52 (1956); 4B *Collier on Bankruptcy* ¶ 70.98, at 1201–04 (14th ed. 1978).

**3.** The defendant's appeal of the March 21, 1984 order establishing liability was dismissed by United States District Judge James C. Fox on July 26, 1984 on the ground that the appeal was interlocutory and no request had been made for leave to appeal. (No. 84–423–CIV–5). The case was remanded to the bankruptcy court for further proceedings.

For purposes of the sale, the island was divided into approximately 40 lots and the sale was first conducted on a lot-by-lot basis. Mr. Eways, at the conclusion of the lot-by-lot sale, made a bid of $1,960,000 for the island as a whole. Mr. Eways' bid was accepted, and in accordance with the terms of the sale, Mr. Eways delivered to the auctioneer his personal check for $294,000 as a deposit in the amount of 15% of the purchase price.

Mr. Eways, as "Buyer," and the debtor (by Peter J. Sarda, attorney, and Lynn Adams, general partner) and Allen-Dukes, partnership (by Alfred P. Carlton, attorney, and James E. Allen, partner), as "Sellers," executed a preprinted standard form contract provided by the auctioneer, J.L. Todd Auction Co. The document described the property being sold as:

Tract 1 thru 42 and A–B–C–D–E of Jones Island in Township No. 3 of Pamlico County, North Carolina as shown on attached plat dated December 1983. Land and Timber Including Mineral Rights Now Owned By Sellers.

The form contained the following "Reservations and exceptions":

This contract subject to final approval of the Bankruptcy Court for the Eastern District of North Carolina. + Middle District of Georgia.

The preprinted form provided as a further "Reservation and exception" that the sale was:

Subject to announcements made from auction stand and subject to existing and utility easements.

The $294,000 deposit was "to be deposited upon approval by Court" and the balance of the purchase price ($1,666,000) was to be paid "on or before 30 days."

A preprinted part of the form stated: Note: If balance is not paid when due, deposit shall be retained by seller as liquidated damages.

Finally, above the sellers' signature lines is preprinted language which says:

The above offer is accepted and I agree to furnish good and marketable title with such legal conveyance as necessary to complete the sale.

As required by the terms of sale, this court approved the sale to Mr. Eways on January 16, 1984. By order dated February 3, 1984, the United States Bankruptcy Court for the Middle District of Georgia held that approval of the sale of the Allen-Dukes property by that court was not necessary in the absence of an objection to the sale.

The auctioneer negotiated Mr. Eways' check for the $294,000 deposit, but the check was returned by Mr. Eways' bank for "insufficient funds." Mr. Eways subsequently wired $184,000 to the auctioneer.

Mr. Eways contacted a real estate attorney, Mr. B. Hunt Baxter, Jr., to represent him in this transaction. After examining the title to the island, Mr. Baxter found what he believed to be serious title defects and advised Mr. Eways not to send the balance ($110,000) of the $294,000 deposit. (T. p. 10). Mr. Baxter also contacted Mr. Sarda, counsel for the debtor, to advise him both of the title defects, and in view of those defects, that Mr. Eways would not close the transaction. (T. p. 6 referring to p. 5). Accordingly, the sale was not closed on February 21, 1984, the closing date specified by the terms of sale.

The debtor applied to the court for a forfeiture of the deposit, and after a full evidentiary hearing at which the general partners for each of the plaintiffs and Mr. Eways testified, the court ruled that Mr. Eways had "unjustifiably breached his obligation to purchase the property by not paying the purchase price on February 21, 1984." The court did not determine the amount of damages and gave Mr. Eways a second chance to consummate the sale. Mr. Eways was given until March 23, 1984 to deliver the balance of the deposit ($110,000) and until April 20, 1984 to close the sale—he did neither.

The island was resold, after proper notice as required by 11 U.S.C. § 363(b) and by Bankruptcy Rules 6004 and 2002(a)(2) and (c), on May 5, 1984. The highest bid at the

resale was $1,100,000 and the sale was approved by order of this court on May 25, 1984.

Mr. Eways argues that he should not be liable to the plaintiffs because the agents of the plaintiffs "misrepresented" the ownership interest of the plaintiffs in the island and "failed to disclose to the defendant or any other prospective purchasers the title problems that they knew or should have known." (Counterclaim p. 6). The defendant generally alleges that the plaintiffs through their agents intended to deceive the defendant; but he neither sets forth the specific circumstances of the misrepresentations, nor shows that he reasonably relied upon any misrepresentations.

The defendant also contends that he is not liable to the plaintiffs because they had agreed and then failed "to furnish good and marketable title." Specifically, Mr. Eways says that the title is not marketable because:

(1) A total of 589.1 acres of the island are situated under navigable waterways;

(2) Fifty (50%) percent of the oil and natural gas rights of the island are not owned by the plaintiffs;

(3) Title to the marshes of the island which comprise 2,802.77 acres is in question where the marshes lie below the mean high water mark of the surrounding bodies of water;

(4) A portion of the island consisting of approximately twenty (20) acres is neither owned nor claimed by the plaintiffs "even though the plaintiffs purported to sell the entire island at the auction."

(5) The plaintiffs "do not have a connected chain of title to said island for at least sixty years." (see Counterclaim p. 5).

With the exception of Item # 4 (20 acres not owned by the plaintiffs) and Item # 5 (no 60-year connected chain of title), the arguments are the same as those made at the prior hearing on March 19, 1984. (T. p. 7).

As it did in connection with the prior hearing, the court, for purposes of this motion, assumes that Mr. Eways' allegations # 1, # 2 and # 3 are true.

With respect to new allegations # 4 and # 5, these defenses could have been raised at the hearing on March 19, 1984, but they were not. Even assuming that the 20 acres is not owned by the plaintiffs, the uncontradicted evidence at the March 19, 1984 hearing was to the effect that an announcement had been made that a "15 acre tract" was excluded prior to the sale. (T. p. 24).

The defendant's final contention is that he should not be liable to the plaintiffs because the plaintiffs never tendered a deed.

## DISCUSSION REGARDING LIABILITY

### Caveat Emptor

■ The doctrine of *caveat emptor* applies to bankruptcy sales. This was true under the Bankruptcy Act of 1898 and the former Bankruptcy Rules,[4] and it is true under the Bankruptcy Code and the present Bankruptcy Rules. The doctrine of *caveat emptor* as related to sales of land applies to title as well as quality and condition. 8A *Thompson on Real Property* § 4470, at 397 (1963).

The purchaser "is charged with notice of such material facts as the record of the proceedings under which he derives title discloses, and he will be presumed to have examined the same before becoming a purchaser." 5B *Thompson on Real Property* § 2743, at 413 (1978).

■ Section 70(f) of the Bankruptcy Act and former Bankruptcy Rule 606(b)(1) required property of the estate, unless the court ordered otherwise, to be sold subject to the approval of the court. It was said that the bankruptcy sale was a judicial sale—"one by the court itself with the trustee or other officer who conducts it acting merely as the court's agent." 6 *Reming-*

---

4. *Handlan v. Bennett,* 51 F.2d 21 (4th Cir.1931); *Collier on Bankruptcy* ¶ 70.98, at 1201 (14th ed. 1978).

*ton on Bankruptcy* § 2566, at 60 (1952). Bankruptcy Code § 363(b) and Bankruptcy Rule 6004 now allow a trustee or debtor-in-possession to sell property of the estate "after notice and a hearing." Court approval is not necessary in the absence of an objection unless the terms of sale, as in the sale presently before the court, require approval of the court.

Although bankruptcy sales may now be finalized without court approval, the doctrine of *caveat emptor* should still apply to sales sanctioned by the Bankruptcy Code.

■ Sales of property of the estate under 11 U.S.C. § 363(b), whether conducted by a trustee or a debtor-in-possession with the powers of a trustee (11 U.S.C. § 1107(a)), are made without warranties. The very nature of the bankruptcy process requires that sales of property of the estate be final. To permit a purchaser to question the title to property subsequent to sale would introduce an element of uncertainty as to all such sales and expose the estate to liability in the future.

■ Also, to allow a purchaser to challenge the title after sale gives an advantage to those who are not vigilant at the expense of those who are. It would indeed be inequitable to allow a purchaser, who had made no investigation, to withdraw from a sale because of title defects, when to do so could deprive the estate of the benefit of the bid of a diligent bidder who had discovered the defect and was, nevertheless, willing to make the purchase.

In the present case, Mr. Eways' high bid on the entire island may have deprived the estate (and, of course, the bidders themselves) of the bids made at the lot-by-lot sale.

### Misrepresentation

■ The defendant contends that the doctrine of *caveat emptor* should not apply because the auctioneer, as agent for the plaintiffs, "misrepresented" the plaintiffs' "ownership interest of the island" and "failed to disclose ... the title problems that they knew or should have known existed." Generally, *caveat emptor* will not apply if there has been fraud or misrepresentation. The uncontradicted facts, however, indicate that the title defects *were* announced at the sale.

■ Furthermore, the defendant's allegations are not sufficiently specific to allege a case of misrepresentation or actionable fraud. The essential elements of misrepresentation are that,

The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied upon by the other party, and he must be deceived and caused to suffer loss. *Johnson v. Owens*, 263 N.C. 754 at 756, 140 S.E.2d 311 (1965).

The defendant has not alleged fraudulent conduct with the requisite degree of particularity (Federal Rules of Civil Procedure, Rule 9(b)). Furthermore, the undisputed facts support a conclusion that Mr. Eways' conduct in failing to make *any* investigation was anything but reasonable reliance.

■ All of the defects in title of which the defendant now complains should have been discovered by the defendant had he undertaken the minimum investigation expected of a reasonable purchaser. By his own admission, however, he made no investigation, undertook no title search, and did not visit the island. Had Mr. Eways visually inspected the island he would have known the condition of the land, seen any marshes, and observed what land was or was not underwater. Similarly, had he examined the title prior to the sale, he would have known the status of the oil and natural gas rights, the 20-acre tract, and the duration of the chain of title.

Mr. Eways had every opportunity to inquire into any of the sellers' representations but neglected to do so. He entered into the contract at his own risk. *Calloway v. Wyatt*, 246 N.C. 129, 97 S.E.2d 881 (1957); *Moore v. Midgette*, 252 F.Supp. 776 (E.D.N.C.1966); *Homelite v. Trywilk Realty Company*, 272 F.2d 688 (4th Cir.1959); *Hawks v. Brindle*, 51 N.C.App. 19, 275

S.E.2d 277 (1981); *Fox v. Southern Appliances,* 264 N.C. 267, 141 S.E.2d 522 (1965); *Crowder v. Langdon,* 38 N.C. 476 (1845).

The United States Supreme Court, in the case of *Slaughter's Administrator v. Gerson,* 80 U.S. 379, 13 Wall. 379, 20 L.Ed. 627 (1871), dealt with the problem of misrepresentation and said:

> The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained. 80 U.S. at 383.

### Agreement to Convey "Marketable Title"

■■■ Mr. Eways next argues that the preprinted language in the auctioneer's form, which says:

> The above offer is accepted and I agree to furnish good and marketable title with such legal conveyance as necessary to complete the sale,

obligates the plaintiffs to provide marketable title and that the defects in title relieve Mr. Eways of his obligation to purchase.[5] There are several reasons, however, why the language in the auctioneer's form does not relieve Mr. Eways of his liability to the plaintiffs.

What was sold was an identifiable island and,

> (W)here a specific tract of land is purchased in gross for a lump sum or stipulated amount, the doctrine of *caveat emptor* applies.

> Where the land is sold in bulk for a lump sum, then quantity is not generally of the essence of the contract and the parties take the risk of deficiency or excess, except in cases where there is actual fraud or gross deficiency. *Queen v. Sisk,* 238 N.C. 389 at 391, 78 S.E.2d 152 (1953).

■■■ This doctrine should be especially appropriate where the real property involved is a North Carolina coastal island, the dimensions of which are constantly changing through erosion, accretion, or reliction.

As already mentioned, Mr. Eways had every opportunity to examine the island, but he did not. Had he seen the island, he could have determined the island's size and the extent of the marshes.

The preprinted form signed by the parties also makes clear that the sale was

> "subject to announcements made from the auction stand."

Uncontradicted testimony at the March 19, 1984 hearing established that announcements from the auction stand included a disclosure that 50% of the oil and natural gas rights were not owned by the plain-

---

5. In North Carolina, marketable title is defined as one free from reasonable doubt in law or fact as to validity. *Burkhead v. Farlow,* 266 N.C. 595, 146 S.E.2d 802 (1966); *McCain v. Cox,* 531 F.Supp. 771 (N.D. MS 1982), affirmed 692 F.2d 755 (5th Cir.1982).

tiffs, that a tract of approximately 15 acres was not owned by the plaintiffs and was not being sold, and that the plaintiffs could not sell land under navigable waters. Mr. Eways does not contend that these announcements were not made, only that he did not hear them.

■ The defendant's contention that the plaintiffs do not have a connected chain of title for at least sixty years also does not relieve Mr. Eways from liability, even if the debtor is obligated to give marketable title. An obligation to provide marketable title does not imply any obligation to furnish a title that will be satisfactory to the vendee or his attorney, or one that he will be willing to accept. *Burkhead v. Farlow,* 266 N.C. 595 at 599, 146 S.E.2d 802 (1966). Mr. Eways and his attorney might prefer to have an established chain of title going back 60 years, but the absence of such chain of title in itself is not sufficient to excuse Mr. Eways' obligation to complete the purchase, and does not render title to the island unmarketable.

### Failure to Tender Deed

■ The defendant's final argument is that the plaintiffs did not tender a deed. The defendant, however, has acknowledged that his attorney notified the plaintiffs' attorney that the title was defective and that Mr. Eways would not close the transaction. To require the plaintiffs to tender a deed in those circumstances would be a useless act which the law does not require. *Walton v. Cagle,* 269 N.C. 177, 152 S.E.2d 312 (1967).

### Summary Judgment Standards

■ Summary judgment under Rule 56 of the Federal Rules of Civil Procedure (made applicable here by Bankruptcy Rule 7056) should be granted only where it is perfectly clear that there is no genuine dispute about either the facts of the controversy or the inferences to be drawn from those facts. *Morrison v. Nissan Co. Ltd.,* 601 F.2d 139 (4th Cir.1979). A motion for summary judgment

is designed to pierce the allegations in the pleadings and determine whether

there are any factual issues that need to be tried. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2712 (1983). Summary judgment shall be rendered for the moving party 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). Summary judgment is not a substitute for trial of disputed facts, however. *West v. Costen,* 558 F.Supp. 564, 574 (W.D.VA 1983).

In this adversary proceeding the undisputed facts are such that summary judgment as to the issue of Mr. Eways' liability to the plaintiffs should be granted.

### DISCUSSION OF DAMAGES

Shortly after the defendant refused to consummate the sale, the debtor moved to forfeit the defendant's deposit. In doing so, the debtor argued in favor of the validity of the 15% "liquidated damages" provision of the agreement. The debtor has changed its position and now contends that the proper measure of damages is $860,000, being the difference between Mr. Eways' bid ($1,960,000) and the bid at resale ($1,100,000), plus interest at the rate of $8,000 per month, plus $120,000, the expense of the auction.

Mr. Eways maintains that the proper measure of damages is 15% of the sales price as stated in the agreement.

■ The general rule is that a delinquent purchaser may be ordered to pay the deficiency resulting from a resale. 4B *Collier on Bankruptcy* ¶ 70.98, at 1203 (14th ed. 1978); North Carolina General Statute § 1–339.30(e) (1983). The cases cited by the plaintiffs support that position, but those cases do not involve sales subject to liquidated damage agreements. *Perfecting Service Co. v. Product Development and Sales Co.,* 259 N.C. 400, 131 S.E.2d 9

(1963); *Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 111 S.E.2d 606 (1959).

Liquidated damage clauses have become regularly used and frequently upheld provisions in bankruptcy sales as well as other types of real property sales. 4B *Collier on Bankruptcy* ¶ 70.98, at 1203 (14th ed. 1978); E. Hightower, *North Carolina Law of Damages* § 5–1, at 39 (1981). It has been said that

> The courts after some pulling and hauling have become more tolerant of such provisions, have become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in a recovery of an amount stated as liquidated damages, upon violation of a contract, and without proof of the damages actually sustained. *United States v. Bethlehem Steel Co.*, 205 U.S. 105–119, 27 S.Ct. 450, 51 L.Ed. 731 (1907).... The present rule is to look with candor if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance, and because adjusting in advance, and amicably, matters the settlement of which through courts would involve difficulty, uncertainty, delay and expense. *Wise v. United States*, 249 U.S. 361, 365, 366, 39 S.Ct. 303, 63 L.Ed. 647 (1919). *E.g., Gordon v. Woods*, 202 F.2d 476 (1st Cir.1953), reh. denied, 203 F.2d 363 (1953).

Several bankruptcy courts have upheld liquidated damage provisions in sales under the Bankruptcy Code. *In re Sombrero Reef Club, Inc.*, 15 B.R. 177 (Bankr.S.D.FL 1981); *In re Lipman Bros., Inc.*, 35 B.R. 178 (Bankr.MA 1983); and *In re Klemen*, 22 B.R. 757 (Bankr.N.D.IL 1982).

It is usually the purchaser who seeks relief from a liquidated damage provision, but that is not always the case. *See, In re Klemen*, 22 B.R. 757, and *Kinston v. Suddreth*, 266 N.C. 618, 146 S.E.2d 660 (1966). Justice Sharp, writing for the North Carolina Supreme Court in the *Kinston* case,

said "(w)e apprehend that it is rare indeed that a party—as here—attempts to use the plea offensively to collect damages in excess of the stipulated amount." *Kinston*, 266 N.C. at 620, 146 S.E.2d 660. The court went on to hold that even if a liquidated damages clause be deemed a penalty, "the measure of damages is compensation for the actual loss, **not exceeding the penalty** named. *Wheedon v. American Bonding & Trust Co.*, 128 N.C. 69, 71, 38 S.E. 255." *Kinston*, 266 N.C. at 621, 146 S.E.2d 660 (emphasis original). In *Klemen*, the bankruptcy court limited the damages to the amount stipulated ($5,500) in lieu of actual damages determined by resale ($25,000) where the contract of sale provided that "the earnest money *shall* become liquidated damages." (emphasis added).

■ Some courts have exercised their equitable powers to relieve purchasers from unconscionable consequences of some liquidated damages clauses. *Lange v. Farmers Federation Cooperative, Inc.*, 249 F.Supp. 544 (W.D.N.C.1966). The same equitable power could also be used to relieve a seller from the effects of an unconscionable liquidated damages clause. That power, however, should be used sparingly if at all. The court should not remake contracts in every case by weighing the equities. If that were the case, the plaintiffs in this proceeding would be entitled to the full amount of their damages because, as between plaintiff and defendant, the equities are in favor of the plaintiff. The defendant's conduct in bidding without investigation, without financing, and without the funds to cover his $294,000 deposit check was careless and irresponsible.

■ The language contained in the agreement, prepared by the plaintiffs' agent, however, is clear and unambiguous. "If the balance is not paid when due, deposit *shall* be retained by seller as liquidated damages." (emphasis added). The clause complies with the generally accepted rule for liquidated damages clauses which is that a stipulated sum is for liquidated damages:

(1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and

(2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* (emphasis original) is reasonably proportionate to the damages which have been actually caused by the breach. *Knutton v. Cofield*, 273 N.C. 355, 361, 160 S.E.2d 29 (1968).

Furthermore, the provision is unconscionable to neither the seller nor the purchaser. The undisputed facts in this adversary proceeding lead to the conclusion that summary judgment is appropriate to fix the amount of damages at the amount of the deposit, $294,000.

The defendant has not moved for summary judgment, but the court is not precluded from entering summary judgment where there is no genuine factual dispute and the non-movant is entitled to summary judgment as a matter of law. 6 *Moore's Federal Practice* ¶ 56.12, at 56–334 (2nd ed. 1983). Accordingly, judgment shall be entered in favor of the plaintiffs in the amount of $294,000 plus interest as provided in 28 U.S.C. § 1961(a).

SO ORDERED.