MAX SAMPSON ET UX. *v.* JOHN McADOO ET UX.

[No. 600, September Term, 1980.]

*Decided February 5, 1981.*

The cause was argued before MOORE, MASON and MACDANIEL, JJ.

*Max Sampson* for appellants.

*Jerome C. Schaefer,* with whom were *Hanson, O'Brien, Birney & Butler* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

The defaulting executory vendees of improved residential property located in the District of Columbia brought suit

against the vendors for the recovery of a $5,000 deposit. The court (Mitchell, J.) granted the plaintiffs' motion for summary judgment, finding that the vendors had failed to forfeit the deposit under an option contained in the contract of sale. For the reasons stated, we reverse.

I

The contract between the parties was entered into on May 19, 1978, and provided for the purchase and sale of premises known as 1417 Longfellow St., N.W., Washington, D.C. for the sum of $124,000. The purchasers-appellees were to pay $24,800 at settlement and to place a conventional first deed of trust for $99,200 at the lowest obtainable rate of interest. The contract was contingent upon the ability of the purchasers to secure the first deed of trust loan. The purchasers made a deposit in the sum of $5,000. By an addendum to the contract, it was agreed that the deposit would be placed in an interest-bearing escrow account at the National Bank of Washington in the name of one of the vendors, Max Sampson, an attorney, as escrow agent.

Paragraph 12 of the contract provided:

"12. FORFEITURE OF DEPOSIT/LEGAL REMEDIES. If the Purchaser shall fail to make full settlement, the deposit herein provided for may be forfeited at the option of the Seller, in which event the Purchaser shall be relieved from further liability hereunder, unless the Seller elects not to forfeit the deposit and notifies the Purchaser and the Agent in writing within 30 days from the date provided for settlement herein of his election to avail himself of any legal or equitable rights which he may have under this contract, other than the said forfeiture. * * *"

Settlement under the contract was to take place within 75 days, or not later than August 3, 1978. However, it does not appear that settlement was scheduled by the sellers on or before the latter date. On August 7, 1978, the purchasers,

through an agent, informed the sellers that they would be unable to settle because they had not obtained the necessary financing, and that "they wanted out of the contract." The agent was told by one of the sellers, Joan B. Sampson, that the purchasers "would not get their deposit back."

By letter to the purchasers dated August 9, 1978, the sellers stated, in part:

> "Since we were informed on Monday, August 7, 1978, (1) that your loan commitment from Advance Mortgage Corporation is contingent upon the sell [sic] of your Columbia, Md., home for a certain amount, and (2) that you are having some difficulty finding a buyer for your Columbia home, we are, with your consent unless you inform us within 72 hours after receipt of this letter that you do not wish us to do so, placing our home at 1417 Longfellow St. on the market for purposes of securing a back-up contract. If we should secure such a back-up sales contract, you will be notified and will have 72 hours in which to ratify and finalize the sales contract between us. If you do not so radify [sic] and finalize the sales contract within 72 hours of notification, the contract between us will be void."

On August 17, 1978 the sellers entered into a contract with another purchaser, Mr. Norbert Meister, for the sale of their house for $124,000 — the same price as that specified in the contract with the appellees. Settlement under this contract took place on October 4, 1978.

The record reveals that the McAdoos requested, through their agents, the return of their $5,000 deposit from the Sampsons. The latter refused to do so. Thereafter, on January 24, 1979, the McAdoos filed suit in the District Court of Maryland for Montgomery County for the return of their $5,000 deposit.[1] Upon appellants' request for a jury trial, the case was transferred to the Circuit Court for Montgomery

---

1. In their Statement of Claim, the appellees alleged that the contract was contingent upon their ability to obtain the requisite mortgage financing and despite diligent efforts, they were unsuccessful. This theory of recovery does not appear to have been pressed in the hearing below.

County. On March 20, 1979, the appellants filed a plea and counterclaim. The counterclaim was comprised of three separate claims. In the first, the appellants stated:

"Defendants ask the court to issue an order declaring that the defendants are entitled to the forfeiture of plaintiff's deposit in the sum of $5,000, pursuant to sections 3-401 to 3-403 [declaratory judgment actions] of the Annotated Code of Maryland, Courts and Judicial Proceedings Article."

The second counterclaim alleged damages in the amount of $5,000 for the appellees' failure to proceed to closing, and the third counterclaim alleged fraud with no damages specified.[2]

On September 10, 1979, the appellees moved for summary judgment. In the motion, the appellees stated, *inter alia,* that they were entitled to the recovery of their $5,000 deposit since the appellants "failed to forfeit the deposit under PARAGRAPH 12 of the contract between the parties." In opposition, the appellants argued that under the law of the District of Columbia, applicable here, no written notice of forfeiture was required by the vendors, and that the record revealed sufficient acts of forfeiture so as to give the appellees notice of the forfeiture. On January 25, 1980, the court granted appellees' motion for summary judgment, finding the evidence before it "meager" and "insufficient to allow the court to infer that actions legally sufficient to constitute a forfeiture were ever committed." This appeal followed the denial of appellants' motion to set aside the summary judgment.

## II

In determining whether appellees' motion for summary judgment was properly granted, we turn to District of

---

2. On September 24, 1979, the appellants amended their counterclaim by deleting the claim for damages. Of course, under the contract, the damage remedy could not have been pursued because the sellers had not given the purchasers written notice, under paragraph 12, within 30 days of the settlement date, of their intention to do so.

Columbia case law with respect to forfeitures, as did the court below. Initially, we observe that the appellees admit, "for the purposes of this brief and argument," that they were guilty of "anticipatory breach" of the contract herein as of August 7, 1978; and, therefore, they are faced with the fundamental principle that "one who breaches his contract has no right to demand return of that which he has paid under it if the other party is not in default." *Schwartz v. Rettger,* 83 A.2d 279, 280 (D.C. Mun. App. 1951).

Forfeiture provisions of the type involved in this case are valid and enforceable in the District of Columbia. *Sheffield v. Paul T. Stone, Inc.,* 98 F.2d 250 (D.C. Cir. 1938); *Brodsky v. Linder,* 118 A.2d 803 (D.C. Mun. App. 1955). The forfeiture provision in the instant case provided, in part, that "[i]f the Purchaser shall fail to make full settlement, the deposit herein provided for *may be* forfeited at the option of the *Seller. . . ."* (Emphasis added.) "Forfeit" as used in such contract provisions is not used in the same sense as a penalty but means "to keep as liquidated damages and call the contract off." *E.g., Schwartz, supra,* 83 A.2d at 280.

It is also clear that upon a buyer's breach, one of three remedies may be available to the innocent seller: 1) an action in equity for specific performance; 2) a suit at law for damages based upon breach of contract; and 3) forfeiture of the deposit under an optional forfeiture clause. *Sheffield, supra,* 98 F.2d at 252. However, there must be an election of remedies and, as stated in *Sheffield,* the injured parties "cannot be permitted to make [the] choice between liquidated and actual damages after they have determined which are the greater; for the intent of the option clause is not to give them that advantage, but to make it unnecessary for them to ascertain actual damages." *Id.*

It is undisputed that the Sampsons did not avail themselves of the actual damages remedy because they did not notify the purchasers in writing within 30 days from the date provided for settlement, as required by paragraph 12 of the contract. Neither was specific performance of the contract available because of their prompt resale of the house.

The question, therefore, is whether the appellants successfully pursued their option to forfeit (keep as liquidated damages) the $5,000 deposit. If they did not, they must return the deposit. The statements made with respect to the alleged forfeiture as contained in the appellants' depositions and affidavits which were before the lower court are interpreted differently by the parties herein. Basically, the appellants argue that Mrs. Sampson's statement to the appellees' agent that "the McAdoos would not get their deposit back" was a sufficient declaration of forfeiture. The Sampsons did, indeed, retain the deposit, despite numerous requests for its return.

The appellees, on the other hand, point to language in the deposition of Max Sampson where he stated that he did not know what date the deposit was forfeited and that regarding his actions in claiming a forfeiture, "there was no overt act." [3] Although we conclude that the lower court erred in finding no forfeiture and therefore, shall reverse, we do so for reasons unrelated to the appellants' alleged oral declaration of forfeiture.

An examination of the District of Columbia cases reveals that a forfeiture need not be written or in any particular form. The cases suggest, however, that mere retention of a deposit, without more, is not enough. In *Sheffield v. Paul T. Stone, Inc.,* 98 F.2d 250 (D.C. Cir. 1938), the court noted that the seller, upon the buyer's breach, chose to establish actual damages by selling the house to third persons, and to hold the buyers for the damages established. The court went on to state, "[t]hey [the sellers] had never expressed, and apparently had never formed, an intention to 'forfeit' the deposit as liquidated damages. They not only expressed an intention to collect actual damages but proceeded to fix their amount, if any, by a resale of the house." In *Campanella v. Diener,* 122 A.2d 772 (D.C. Mun. App. 1956), the court observed that the parties conceded that the seller "declared" no forfeiture: *see also Schwartz v. Rettger,* 83 A.2d 279 (D.C.

---

3. Sampson's explanation for his statements was that he was answering this particular line of questioning with reference to a forfeiture of the contract in general and not to a forfeiture of the deposit.

608

Mun. App. 1951). There is thus the need for some mani-
festation of an election to forfeit; and this is consistent with
the previously noted rule that an innocent seller must make
his choice between a forfeiture and actual damages prior to
a determination of damages.

Moreover, we observe that Maryland case law, similar in
other respects to District of Columbia law regarding such
provisions (as specifically noted in *Schwartz v. Rettger,
supra,* 83 A.2d at 280), requires that a seller, before estab-
lishing complete ownership of a deposit, "must as a condition
precedent declare a forfeiture. In other words, until the
sellers actually forfeit the deposit, the contract vendors . . .
have no ownership in . . . [the deposit] . . . because the mere
default or breach by the purchaser does not *of itself,* operate
as a forfeiture." (Emphasis added.) *Casey v. Jones,* 275 Md.
203, 206, 339 A.2d 33, 35 (1975); *Chasanow v. Willcox,* 220
Md. 171, 151 A.2d 748 (1959). In *Chasanow,* the Court of
Appeals stated:

> "If, when he [the purchaser] defaulted, the seller
> had *notified* the purchaser of his intent to forfeit the
> deposit and had thereafter done so as the broker
> had requested the seller to do, there is no doubt that
> the seller could have kept the deposit as liquidated
> damages under the terms of the contract, and the
> purchaser's right to a refund of the deposit would
> have terminated. *See Spellman v. Dundalk Co.,*
> 1933, 164 Md. 465, 165 A. 192; Annotation, 31
> A.L.R.2d 8, 37 (1953); 91 C.J.S. Vendor and Pur-
> chaser § 139b(1). *See also Asher v. Hull,* 1952, 207
> Okl. 478, 250 P.2d 866. But when the seller — or his
> broker for him — retains the deposit without
> forfeiting it and thereafter resells the property to
> another purchaser at the same price it had been sold
> to the original purchaser, *the mere retention of the
> deposit does not amount to an election to forfeit it.
> See Sheffield v. Paul T. Stone, Inc.,* 1938, 68 App.
> D.C. 378, 98 F.2d 250. *Cf. Barnette v. Sayers,* 1923,
> 53 App. D.C. 169, 289 F. 567." (Emphasis added.)

*Chasanow, supra,* 220 Md. at 177, 151 A.2d at 751.

Thus, recognizing that some act which specifically estab-lishes a forfeiture [4] is required before a vendor may be held to have forfeited the deposit, we conclude that the act was accomplished in the instant case when the Sampsons filed their counterclaim in response to the suit brought by the McAdoos for return of the deposit.[5] We reach this conclusion after a careful examination of the District of Columbia cases where the filing of suit by the seller for the recovery of the deposit, without more, has been held sufficient to constitute a declaration of forfeiture. For example, in *Brodsky v. Linder,* 118 A.2d 803 (D.C. Mun. App. 1955), the lower court found that the seller had elected to declare a breach of contract and sue for damages. The Municipal Court of Appeals disagreed, based upon the complaint filed by the seller:

> "It is true that at the end of the complaint plaintiff alleged that she had been 'damaged by defendants' breach of contract,' *but in the body of the complaint it was made quite plain that the suit was based on the forfeiture clause of the contract, and that plain-tiff claimed that a forfeiture had been worked by defendants' default* and that they should be required to pay the amount of the dishonored check." (Emphasis added.)

*Id.* at 805. *Accord, Brook Haven, Inc. v. Silverman,* 120 A.2d 591, 592 (D.C. Mun. App. 1956) (court looked to pleadings in determining election of forfeiture).

Finally, we note that *Casey v. Jones,* 275 Md. 203, 339 A.2d 33 (1975), *supra,* which supports the McAdoos' position

---

4. A simple statement by the seller that he will not return the deposit is insufficient to amount to a declaration of forfeiture. Such a statement is entirely consistent with an intention to seek damages and to apply the deposit toward the discharge of the purchaser's obligation. *See* Sheffield v. Paul T. Stone, Inc., 98 F.2d 250 (D.C. Cir. 1938).

5. We do not think any prejudice to the appellees resulted by the filing of the counterclaim in March 1979 — over seven months after their breach of contract — especially when the McAdoos knew, or should have known, based upon paragraph 12, that no other remedy was available to the Sampsons after thirty days had elapsed from the contemplated settlement date of August 3 and because specific performance was impossible after the resale.

that a manifestation of forfeiture is required, is not at odds with our conclusion here that such a manifestation by the seller may be in the form of the filing of suit, by counterclaim or otherwise. In *Casey,* the broker sued the defaulting purchaser to obtain payment for a check given as a deposit on a land sale. The sellers had not declared a forfeiture in any manner. Since there had been no forfeiture of the deposit, the court held that the broker "has no such recognizable interest as to entitle him to maintain this suit on the check." *Id.* at 207, 339 A.2d at 36.

We conclude, therefore, that the assertion of a forfeiture in the Sampsons' counterclaim [6] was, under the facts and circumstances herein, a sufficient declaration of forfeiture and that the court should have granted summary judgment to the Sampsons under Maryland Rule 610 (d) (1).

> *Judgment reversed; case remanded for entry of summary judgment for appellants; costs to be paid by appellees.*

---

6. We do not reach the question whether the general issue plea would itself be sufficient.