5 A.3d 768

Annette GONSALVES

v.

Thomas BINGEL, et al.

No. 983, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Sept. 17, 2010.

Reconsideration Denied Oct. 28, 2010.

696

Jeremy W. Schulman (Kristin E. Draper, Koushik Bhattacharya, Shulman, Rogers, Gandal, Pordy & Ecker PA, on the brief) Potomac, MD, for Appellant.

Thomas Bingel, Wei Chen of Scottsdale, AZ, for Appellee.

Panel: DEBORAH S. EYLER, WRIGHT, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

Annette Gonsalves, the appellant, contracted at public auction to purchase real property owned by Thomas Bingel and Wei Chen, the appellees. Gonsalves was represented in the transaction by her daughter, Michelle Daley, a lawyer. The contract required among other things an immediate $25,000 deposit and a cash payment of the balance within 30 days. When Gonsalves failed to timely close on the contract, Bingel and Chen filed in the Circuit Court for Anne Arundel County a single count breach of contract action against her, claiming the $25,000 deposit as damages ("the Anne Arundel County Case"). Later, after Bingel and Chen sold the property to another buyer at a price less than the amount Gonsalves had agreed to pay, they sought to amend their complaint to recover, in addition to the deposit, damages for the difference in the sales price as contracted by Gonsalves and as sold to a third party ("actual damages"). The court denied their motion for leave to amend the complaint.

Thereafter, but while the Anne Arundel County Case was pending, Bingel and Chen filed a second breach of contract action, based on the same transaction, in the Circuit Court for Montgomery County ("the Montgomery County Case"). In their complaint in the Montgomery County Case, they sought to recover actual damages.

Bingel and Chen prevailed in the Anne Arundel County Case, recovering a judgment for $25,000 plus prejudgment interest and costs against Gonsalves and Daley. Gonsalves then moved to dismiss the Montgomery County Case on the grounds of improper venue and *res judicata*. The motion was

denied. The Montgomery County Case proceeded to a jury trial and resulted in a verdict of $82,906 in favor of Bingel and Chen. That sum included actual damages.

This appeal is taken by Gonsalves from the judgment entered on the verdict in the Montgomery County Case. Gonsalves raises the following issues, which we have re-phrased:

I. Did the circuit court err in denying her motion for summary judgment based on *res judicata?*

II. Did the circuit court err in denying her motion for partial summary judgment to limit Bingel and Chen's damages to only those that they sought to add by amendment to their Anne Arundel County complaint?

III. Did the circuit court err in partially granting Bingel and Chen's motion for summary judgment and order-ing that she was collaterally estopped to contest the existence of the contract and its breach?

IV. Did the circuit court err in denying her renewed motion for summary judgment as untimely under the Maryland Rules?

V. Did the circuit court err in denying her motion to dismiss for improper venue?

As explained more fully below, we answer "yes" to Gon-salves's first question. Accordingly, we shall reverse the judgment and remand the case to the circuit court for Mont-gomery County for entry of judgment in favor of Gonsalves. Our disposition of the first question in favor of Gonsalves makes it unnecessary to address the remaining questions presented.

## FACTS AND PROCEEDINGS

In mid–2006, Bingel and Chen decided to sell real property they owned in North Beach, Anne Arundel County ("the Property"). The Property, located at 1057 Walnut Avenue, included two adjacent lots improved by a "4–room cottage style" single-family dwelling. Bingel and Chen hired Harvey

West Auctioneers, LLC ("West"), to sell the Property at public auction. The auction contract, dated October 4, 2006, specified that, upon sale of the Property, the buyer would pay West a "buyer's premium" equal to three percent of the "final hammer price (final sale price)."

The auction was scheduled for 2:00 p.m. on October 20, 2006. The advertisement for the auction, which West posted on its website and placed in the *Washington Post*, stated the terms of sale as follows:

A THREE PERCENT BUYER'S PREMIUM WILL BE ADDED TO THE HAMMER PRICE (FINAL SALE PRICE) OF THE SALE. A cash deposit, certified check or cashier's check in the amount of $25,000 at the time and place of sale; balance in cash in 30 days, interest to be paid on the unpaid purchase money at the rate of 8% per annum from date of sale to date of settlement. All settlement expenses including homeowners association dues, if any, to be adjusted to date of sale and assumed thereafter by the purchaser. Cost of all documentary stamps, transfer taxes and all other settlement costs shall be borne by the purchaser. Time is of the essence for the purchaser. *If payment of the balance does not take place within the specified period, the deposit will be forfeited and the property will be resold at the risk and expense of the defaulting purchaser.* PROPERTY TO BE SOLD IN "AS IS" CONDITION, Auctioneer and/or owner make no warranties or representation as to the condition of this property; subject to easements, agreements, leases, covenants and restrictions of record, if any.

(Emphasis added.)

Gonsalves attended the October 20, 2006 auction, inspected the Property, and made a bid of $400,000. Bingel and Chen accepted her bid, and on that day the parties executed a "Memorandum of Purchase at Public Auction" ("memorandum of purchase"). The memorandum of purchase specified that Gonsalves was buying the Property for $412,000 ($400,000 plus the three percent buyer's premium of $12,000) "subject to the

conditions stated [in the advertisement]" and that Gonsalves had paid a $25,000 deposit to West. Michelle Daley was listed on the memorandum of purchase as a purchaser; she did not sign the document, however.

Bingel and Chen and Gonsalves also executed a second, undated, document entitled "Real Estate Contract Additional Terms of Sale."[1] (We shall refer to this document and the memorandum of purchase collectively as the "sales contract.") The additional terms included the following:

> CLOSING: Purchaser agrees to make full settlement in cash within thirty days from the date of the auction sale. *If payment of the balance of the purchase price does not take place within the specified time period, the property will be resold and [sic] the risk and expense of the defaulting purchaser.* All settlement costs are to be borne by the purchaser. All expenses, including real estate taxes and sanitary and/or metropolitan district charges are to be adjusted to day of sale and assumed thereafter by the purchaser. Cost of all documentary stamps, transfer taxes and settlement costs shall be borne by the purchaser. If the Seller(s) is/are unable to convey good and marketable title, the purchaser's sole remedy in law and equity shall be limited to a refund of the deposit.
>
> * * *
>
> All other terms stated in the attached advertisement shall become part of this contract.

(Emphasis added.)

In fact, Gonsalves did not have the cash available to go forward with the purchase. She applied for a home equity loan to obtain the cash necessary to complete the transaction; however, she was unable to complete the loan within 30 days of purchasing the Property (November 20, 2006). As a result, she failed to pay the remaining balance by the 30–day deadline, thereby breaching the sales contract.

---

**1.** The purchase agreement contains a handwritten note to "SEE ADDI-TIONAL TERMS" that presumably refers to this supplemental contract.

On February 2, 2007, Bingel and Chen filed the Anne Arundel County Case. Their complaint named Gonsalves, Daley, and West as defendants and stated a single count for breach of contract. It sought as relief the $25,000 deposit, plus prejudgment interest at the 8% rate specified in the sales contract, and post-judgment interest.

On September 24, 2007, Bingel and Chen sold the Property to a third party for $325,000.

A little over a month later, on October 29, 2007, Bingel and Chen filed a motion for leave to amend their complaint "to correct some mistakes made by [prior counsel], who chose to withdraw his appearance in early July of 2007, when [they] asked him to get serious and start working on this matter." Specifically, Bingel and Chen proposed to amend the complaint to add Ronald M. West, an auctioneer with West, as a defendant, to be held liable for the $25,000 deposit and "yet to be determined damages," and to add to their claim for relief actual damages of $75,000.[2] Regarding the proposed actual damages amendment, Bingel and Chen pointed out that according to the terms of the sales contract the $325,000 sale was "at the risk and expense of the defaulting purchaser." Thus, in their proposed amended complaint, Bingel and Chen sought to recover the $25,000 deposit, $75,000 in actual damages, the expenses and costs related to the sale, and pre- and post-judgment interest.

On November 13, 2007, Gonsalves and Daley filed an opposition to the motion for leave to amend. They argued that the proposed amended complaint was not timely, as it did not comply with the court's scheduling order or with Rule 2–341.

---

2. With respect to Ronald M. West, Bingel and Chen alleged in their motion that "[n]ew information, based on both informal fact investigation and discovery, [had] confirmed that [Ronald M. West] ... [might] be liable (sui generis) to [Bingel and Chen] in addition to defendant Harvey West Auctioneers, LLC." They further stated that they "want[ed] to make it clear" that Ronald M. West, in his individual capacity, "was, and continue[d] to be a party to [the] lawsuit." The proposed amended complaint included a count against Ronald M. West for breach of fiduciary duty.

They further asserted that "[t]he main issue in ... dispute [was] whether [they had] defaulted in purchasing the Property ... and until [the court decided that issue in favor of Bingel and Chen], [Bingel and Chen] [could not] add an additional claim of $75,000 against [them]."

By order dated December 17, 2007, the court denied Bingel and Chen's motion for leave to amend their complaint. The order stated that Bingel and Chen had provided "no good reason for adding this party [referring to Ronald M. West] this late." The order made no mention of Bingel and Chen's request to include actual damages in their prayer for relief.

Four days later, Bingel and Chen filed the Montgomery County Case, naming as defendants Gonsalves, Daley, and West.[3] Their complaint set forth the same breach of contract claim on which the Anne Arundel County Case was based. The only difference between the Anne Arundel County Case and the Montgomery County Case was that, in Montgomery County, Bingel and Chen were seeking $250,000 in actual and consequential damages arising out of the ultimate sale of the Property for $325,000.[4]

The Anne Arundel County Case was tried to the court on February 27 and 28, 2008. After closing arguments, the judge ruled from the bench, finding in favor of Bingel and Chen and against Gonsalves and Daley.[5] Judgment was entered against Gonsalves and Daley on February 29, 2008. The court memorialized its ruling in a memorandum opinion issued on March 3, 2008. Finding the terms of the sales contract "clear and unambiguous," the court determined that Gonsalves had breached the contract by failing to close on the sale by the

3. Ronald M. West was not named as a defendant in the Montgomery County Case.

4. In addition, Bingel and Chen were seeking $250,000 in damages from West based on an allegation of breach of fiduciary duty.

5. In addition, the court found that West was not liable to Bingel and Chen, and that Gonsalves and Daley were liable to West on a cross-claim it had asserted against them for the $12,000 buyer's premium.

30th day, November 20, 2006. The court found that, although Daley was not "the principal player in this event," she was a "co-beneficiary of the contract and by accommodation [had] ratified the behaviors . . . of Gonsalves." Thus, it ruled that Gonsalves and Daley were jointly and severally liable for the $25,000 deposit, plus prejudgment interest running from November 20, 2006, and costs. No appeal was taken from the judgment in the Anne Arundel County Case by any party.

In the meantime, on February 27, 2008, Gonsalves and Daley filed a motion to dismiss or to transfer the Montgomery County Case. They argued that venue was improper and that, by filing suit in Montgomery County, Bingel and Chen were attempting to "forum shop[ ]" and "circumvent the ruling by the Anne Arundel County Circuit Court . . . den[ying] the[m] leave to amend their complaint in [the Anne Arundel County Case] based on the same issues and claim." [6] West also filed a motion to dismiss the Montgomery County Case on essentially the same grounds.

A hearing on the motions to dismiss was held on June 9, 2008. The court granted the motion to dismiss West on the ground of *res judicata.* It ruled, however, that neither collateral estoppel nor *res judicata* applied to Bingel and Chen's breach of contract claim against Gonsalves and Daley because, in an apparent reference to their effort to amend their complaint to add actual damages, "[Bingel and Chen] did attempt to bring [the claim] in Anne Arundel County and [were] precluded from doing so." The court also ruled that venue was proper in Montgomery County.

On August 8, 2008, Bingel and Chen moved for partial summary judgment in the Montgomery County Case. They argued that the court in the Anne Arundel County Case already had determined that Gonsalves and Daley had breached the sales contract; therefore, "the only remaining issue before the [Montgomery County court] consist[ed] of the

---

6. The motion was amended on June 5, 2008, to include additional authority in support of the argument that venue was improper.

measure of damages to which the [they] [were] entitled."
Bingel and Chen further argued that the damages they were
seeking in the Montgomery County Case were "entirely sepa-
rate and distinct from the damages sought in the Anne
Arundel County matter, and were never addressed in that
case." They argued that *res judicata* did not preclude them
from recovering actual damages because they had attempted
to add those damages to their complaint in the Anne Arundel
Case but had been denied leave to do so.

On August 28, 2008, Gonsalves and Daley filed a cross-
motion for summary judgment, arguing that the Montgomery
County Case was barred by *res judicata* because "the parties,
subject matter and cause[ ] of action in the [Anne Arundel
County Case] [were] identical" to those in the Montgomery
County Case.

The court ruled on the cross-motions at a hearing on
October 3, 2008. After summarizing the procedural posture of
the case, the court discussed the application of "[t]he merger
doctrine aspect of res judicata," which, it explained, "deals
with the issue of [whether] a plaintiff [who] is successful in
getting a judgment against a defendant in a prior litigation
[can] fil[e] a second suit against the same defendant seeking
additional damages." The court cited *Dill v. Avery*, 305 Md.
206, 502 A.2d 1051 (1986), as an example of a case in which the
merger doctrine had operated to preclude the prevailing plain-
tiffs from bringing a second suit for additional damages based
on the same cause of action previously litigated in their favor.
(In the first suit, the plaintiffs had obtained property damages
in an automobile tort action. In their second suit, they were
seeking damages for personal injuries allegedly sustained in
the same automobile accident, against the same tortfeasor.)

The court also quoted this explanation of the doctrine of *res
judicata* from *State v. Brown*, 64 Md. 199, 1 A. 54 (1885):

> " '[W]here a given matter becomes the subject of litigation
> in, and of adjudication by, a Court of competent jurisdiction,
> the Court requires the parties to bring forward their whole
> case, and will not, except under special circumstances per-

mit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence, or even accident, omitted a part of their case. The plea of res judicata applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence might have brought forward at the time.' "

*Id.* at 204, 1 A. 54 (quoting *Beloit v. Morgan*, 74 U.S. 619, 622–23, 7 Wall. 619, 19 L.Ed. 205 (1868)). The judge stated that he understood this to mean that *res judicata* "deal[s not only] with the issues that were adjudicat[ed], but except in special circumstances, [those that] should have been."

The court turned to the case *sub judice* and reasoned that, because Bingel and Chen had moved, without success, to amend their complaint in the Anne Arundel County Case to include actual damages, those damages "were not ruled upon on the merits"; therefore actual damages could be sought and recovered in the Montgomery County Case. The court noted that, under the merger doctrine, a party who has a cause of action with several types of damages only can split the cause of action into different lawsuits with the consent of the adverse party. The court recognized that Gonsalves and Daley had not consented to Bingel and Chen's splitting their cause of action. It postulated nevertheless that, because Gonsalves and Daley had opposed Bingel and Chen's attempt to recover all of their various damages in one action, they could not object to a second action in which Bingel and Chen were seeking to recover the damages not litigated in the first action:

Well, in this case, [Gonsalves and Daley] didn't consent to [Bingel and Chen's splitting the cause of action] but they objected to the filing of those damages together and the court in Anne Arundel County didn't permit that. And although it wasn't consent, it seems that a reasonable

estoppel argument would apply now where if they objected to [Bingel and Chen] bring[ing] [all the claims] in one action it doesn't seem, why they should be heard now to, to object to [Bingel and Chen] bringing [the claims] in two different actions?"

The court concluded that Bingel and Chen had used "reasonable diligence" in attempting to recover all their claimed damages in one action; that the court in the Anne Arundel County Case had prevented them from doing so without "any good reason"; and that these "unique facts and circumstances" brought the case outside the merger doctrine. On that basis, the court denied Gonsalves and Daley's motion for summary judgment based on *res judicata.*

As to Bingel and Chen's motion for partial summary judgment on the issue of Gonsalves and Daley's liability for breach of contract, the court commented that it "[didn't] even know what the ruling on liability was in Anne Arundel County . . . [b]ecause [Bingel and Chen] were seeking . . . damages based on a deposit, and now [they were] seeking damages based upon the sale of a home." Thus, the court elected to "look at [the issue]" and decide it at a later date. The court subsequently denied the motion by order entered October 7, 2009, which stated:

> There is a clear and convincing need for a new determination of the issue of liability because the parties sought to be precluded, [Gonsalves and Daley], as a result of the conduct of [their] adversaries, [Bingel and Chen], and other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action[.]

On October 17, 2008, Bingel and Chen filed a motion for reconsideration. Thereafter, on January 30, 2009, Gonsalves and Daley filed a renewed motion for summary judgment seeking the same relief they had sought before or, in the alternative, to limit the amount of damages Bingel and Chen could obtain to $75,000, on the theory that Bingel and Chen could not obtain an amount of damages in the Montgomery

County Case beyond the amount they could have obtained in the Anne Arundel County Case if the Anne Arundel County court had allowed them to amend their complaint.[7]

The court heard both motions on February 27, 2009. It elected to treat Gonsalves and Daley's motion as an untimely request for reconsideration of the order denying their original motion for summary judgment, and declined to address the motion on that basis. As to Bingel and Chen's motion, the court concluded that, although the court in the Anne Arundel County Case may have decided, as a factual matter, that the contract had been breached, there was an outstanding question whether the damages sought by Bingel and Chen in the Montgomery County Case had resulted from that breach. On that basis, the court ruled that Bingel and Chen needed to prove causation, *i.e.,* "that the damages they[ ] [were] seeking were caused by the breach." Thus, the court granted summary judgment on the issue of breach only. The court reserved ruling on Gonsalves and Daley's request to limit the amount of damages sought by Bingel and Chen to $75,000.

The Montgomery County Case was tried to a jury. The court granted a motion for judgment in favor of Daley. On June 9, 2009, the jury rendered a verdict in favor of Bingel and Chen and against Gonsalves for $82,906. Judgment was entered in that amount, and this appeal followed.[8]

---

7. Gonsalves and Daley did not argue, in either case, that, in an action for breach of a contract to sell real estate, the seller cannot recover the forfeited deposit as liquidated damages *and* also recover actual damages. Nevertheless. we shall discuss this issue, *infra,* as it has relevance to our *res judicata* analysis.

8. In her reply brief, Gonsalves asks us to strike or disregard portions of Bingel and Chen's brief that have nothing to do with the issues being appealed, are "scandalous, offensive, and accusatory statements impugning the trial court, Gonsalves, and the trial court's integrity," or are improper requests for this Court to "review" matters outside the scope of this appeal.

We agree that Bingel and Chen have devoted large sections of their brief to arguing matters not relevant to the issues raised by Gonsalves on appeal and that, notwithstanding that Bingel and Chen did not note a cross-appeal, they ask the Court to review certain rulings by the trial

We shall include additional facts as necessary to our discussion.

## DISCUSSION

Rule 2–501(f) provides that a trial court "shall enter [summary] judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." We review a trial court's grant or denial of summary judgment *de novo* by conducting our own independent review of the record and deciding the same legal issue(s) as the trial court. *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 478–79, 914 A.2d 735 (2007). When, as in this case, there are no disputed facts related to the trial court's grant or denial of summary judgment, our only task is to determine whether the trial court's decision was legally correct. *Id.* at 479, 914 A.2d 735.

Gonsalves contends the breach of contract claim in the Montgomery County Case was barred by the doctrine of *res judicata*, as a matter of law, and therefore the circuit court erred in denying her motion for summary judgment based on that doctrine. She maintains that the Montgomery County Case met all the elements of *res judicata*, *i.e.*, it involved the same parties to the Anne Arundel County Case, it presented a claim identical to the claim presented in the Anne Arundel County Case, and a final judgment had been entered in the Anne Arundel County Case. She further argues that the doctrine of *res judicata* as applied in Maryland plainly bars

court and certain actions by Gonsalves's trial attorneys. Bingel and Chen acknowledge that they failed to note a cross-appeal, but argue that special circumstances precluded them from doing so. Specifically, they allege that their counsel "grossly mishandled" the Montgomery County Case, which led them to terminate him shortly after trial, and that new counsel "withdrew days before [Gonsalves] filed her brief."

Given our disposition of this appeal, we shall exercise our discretion to deny the motion to strike. We point out, however, that, in reaching our decision in this appeal, we have disregarded the irrelevant arguments that Bingel and Chen have included in their brief.

separate claims for damages arising from a single cause of action. Finally, Gonsalves asserts that the ruling by the Anne Arundel County court denying Bingel and Chen's motion for leave to amend their complaint, and her opposition to that motion, does not alter the fact that the Montgomery County Case was barred by *res judicata.*

Bingel and Chen respond that the Anne Arundel County court's ruling denying their motion for leave to amend their complaint was a "procedural determination" based upon their attempt to add a new defendant, and that that court did not address their request to amend their complaint to include actual damages. Therefore, they argue, the denial of their motion for leave to amend was without prejudice to the claim they sought to add, and there never was a judgment on the merits of that claim.[9] As a result, this case falls within an exception to the doctrine of *res judicata* made for parties not given the opportunity to present all their claims in a single cause of action.

*Res judicata* ("a thing adjudicated") is " 'an affirmative defense [that] bar[s] the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit.' " *Anne Arundel County Bd. of Educ. v. Norville,* 390 Md. 93, 106, 887 A.2d 1029 (2005) (quoting BLACK'S LAW DICTIONARY 1336–37 (8th ed. 2004)). *See also Anne Arundel County Ethics Comm'n v. Dvorak,* 189 Md.App. 46, 88, 983 A.2d 557 (2009) (same). By preventing parties from relitigating matters that "have been or *could have been* decided fully and fairly," the doctrine of *res judicata* " 'avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " *Norville,* 390 Md. at

---

**9.** Bingel and Chen's argument on this issue consists largely of record references to and/or quotations of trial memoranda, motions hearings, and rulings by the Montgomery County court that we have summarized above.

107, 887 A.2d 1029 (quoting *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989)) (emphasis in original). The elements of *res judicata* are:

> (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits.

*Id.* at 107, 887 A.2d 1029 (citations omitted).

There is no dispute that the parties in the present litigation are the same as those in the Anne Arundel County Case. Moreover, there is no question that the Anne Arundel County court entered a final judgment on Bingel and Chen's breach of contract claim. Thus, the outstanding issue is whether, for purposes of *res judicata,* Bingel and Chen's claim for actual damages, which they pursued (successfully) in the Montgomery County Case, is the "same claim" they were not permitted to pursue in the Anne Arundel County Case.

To answer this question, we must apply the transactional approach of the RESTATEMENT (SECOND) OF JUDGMENTS § 24:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*See Norville,* 390 Md. at 108–09, 887 A.2d 1029; *Dill v. Avery, supra,* 305 Md. at 209–10, 502 A.2d 1051; *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 499, 525 A.2d 232 (1987).

■ The transactional approach effectively obligates a plaintiff to bring in a single action all claims "based upon the same set of facts[,] and [that] one would [ordinarily] expect ... to be tried together." *Norville*, 390 Md. at 109, 887 A.2d 1029. Comment *a* to section 24 explains the logic behind the rule:

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

This definition of claim to engross the relevant transaction, as envisioned in this Topic, simplifies the application of the rules of merger and bar (see, for example, § 25, Comment *a* ); it enhances the benefits deriving from those rules without causing undue hardship. Equating claim with transaction, however, is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined. A modern procedural system does furnish such means. It permits the presentation in the action of all material relevant to the transaction without artificial confinement to any single substantive theory or kind of relief and without regard to historical forms of action or distinctions between law and equity. A modern system allows allegations to be made in general form and reads them indulgently; it allows allegations to be mutually inconsistent subject to the pleader's duty to be truthful. It permits considerable freedom of amendment and is willing to tolerate changes of direction in the course of litigation. Parties can resort to compulsory processes besides private investigations to ascertain the facts surrounding the transaction, thereby measurably avoiding surprise at the trial. The pretrial conference contributes to the same end of

developing the whole case. The law of res judicata now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so.

■ Applying the transactional test to the case *sub judice*, we conclude that the doctrine of *res judicata* barred Bingel and Chen's case against Gonsalves. The Anne Arundel and Montgomery County Case each stated a single cause of action against Gonsalves for breach of contract, based upon the same transaction. Given that the damages Bingel and Chen were seeking stemmed from a single occurrence/set of facts, namely, the alleged breach of the sales contract for the Property, the parties to the contract reasonably would have expected that all claims for damages would be brought in one forum, in one case. Moreover, the law on damages recoverable for breach of a contract to sell real property necessitates that any such damages claims be tried and decided as a unit.

There is a developed body of case law in Maryland concerning the circumstances in which it is inconsistent, and therefore not permissible, for a seller of real estate to keep a breaching buyer's deposit *and* recover actual damages for the breach. In *Alois v. Waldman,* 219 Md. 369, 376, 149 A.2d 406 (1959), the buyer in a real estate sale paid a deposit, but the contract said nothing about what would happen to the deposit in the event of a breach by the buyer. When the buyer breached the contract, a dispute arose over the disposition of the deposit. Ultimately, the Court of Appeals held that the deposit was "in the nature of liquidated damages" and could be kept by the seller under that theory. *Id.* at 377, 149 A.2d 406. The Court further commented,

It has been held that one cannot forfeit the deposit as liquidated damages and at the same time make claim for actual damages. *Brook Haven, Inc. v. Silverman,* 120 A.2d 591, 592 (Mun.C.A., D.C.[1956]); *Kaplan v. Walsh* [188 Misc. 1036], 72 N.Y.S.2d 455 [ (1947) ] ... It would seem improper, as the cases indicate, to allow both.

*Id.* (some citations omitted). *See also Cowan v. Meyer,* 125 Md. 450, 465, 94 A. 18 (1915) (holding that a contract clause allowing a general contractor to charge a subcontractor a certain sum for each day the subcontractor's work was late was a liquidated damages clause and, therefore, because the parties had agreed to liquidated damages in the event of the breach that in fact occurred, the contractor could not attempt to recover actual damages instead); *United Surety Co. v. Summers,* 110 Md. 95, 111, 72 A. 775 (1909).

The *Alois* Court acknowledged cases such as *Royer v. Carter,* 37 Cal.2d 544, 233 P.2d 539 (1951) (Traynor, J.), that have held that it is not inconsistent for a seller to keep a breaching buyer's deposit and also seek recovery of actual damages when the deposit is treated as a fund out of which the damages recovered may be paid. It held, however, that there was no evidence to support that theory for keeping the deposit and, in any event, there was no proof that the amount of any claim for actual damages the seller might have would exceed the amount of the deposit.

In *Macon v. Zeiler,* 233 Md. 160, 195 A.2d 687 (1963), and *Siler v. Marshall,* 251 Md. 342, 247 A.2d 385 (1968), the real estate contracts at issue provided that the buyer's deposit would be forfeited in the event of a breach. In *Siler,* the forfeiture was automatic, and the contract expressly provided that, upon forfeiture of the deposit, the buyer would be relieved of all other liability. In both cases, the buyers breached and the sellers sought to recover actual damages in addition to the deposits. The Court held that, under the language of the contracts, the deposit forfeitures were in the nature of liquidated damages and that, under *Alois,* the sellers could not recover liquidated damages and actual damages as well. (The Court also noted in both cases that there was nothing to suggest that the deposits were to be treated as funds from which actual damages could be paid.)

In *Casey v. Jones,* 275 Md. 203, 339 A.2d 33 (1975), and *Blood v. Gibbons,* 288 Md. 268, 418 A.2d 213 (1980), the contracts at issue allowed the sellers to elect, upon a breach

by the buyers, either to forfeit the deposit, sue for damages, or seek equitable relief, so long as notice of the election to pursue a remedy other than forfeiture was given to the buyers within the time specified by the contracts. In both cases, the Court held that if forfeiture of the deposit were elected, it was in the nature of liquidated damages and actual damages could not be recovered. Likewise, in *Sampson v. McAdoo*, 47 Md.App. 602, 606, 425 A.2d 1 (1981), this Court explained:

> [U]pon a buyer's breach, one of three remedies may be available to the innocent seller: 1) an action in equity for specific performance; 2) a suit at law for damages based upon breach of contract; and 3) forfeiture of the deposit under an optional forfeiture clause. However, there must be an election of remedies ... the injured parties cannot be permitted to make the choice between liquidated and actual damages after they have determined which are the greater; for the intent of the option clause is not to give them that advantage, but to make it unnecessary for them to ascertain actual damages.

(Citations and quotation marks omitted.) *See also Ecology Servs., Inc. v. GranTurk Equip. Inc.*, 443 F.Supp.2d 756, 773 (D.Md.2006) ("The Maryland Court of Appeals in [*Blood, supra*, 288 Md. at 274, 418 A.2d 213,] has recognized that if a plaintiff receives liquidated damages, then a claim may not be made for actual damages.").

In the case at bar, the contract language, unlike the language in any of the above cases, provided that, upon breach by the buyer, the deposit would be forfeited *and* the property would be resold at the risk and expense of the buyer. It could be argued, under the "in the nature of liquidated damages" analysis of the *Alois* Court, and the general law of liquidated damages, that the forfeiture of a breaching buyer's deposit in circumstances where the seller can pursue actual damages is not in the nature of liquidated damages, and therefore is a penalty that may not be retained.[10] Likewise, it could be

---

10. *See* 39 A.L.R.5th 33 ("In accordance with the law as to liquidated damages in contracts generally, a valid liquidated damages clause in a

argued that a contract allowing forfeiture of the deposit and recovery of actual damages must, for the sake of consistency, be read to mean that the deposit could be retained merely as a fund to be applied to any actual damages recovered. These issues are not before us, however, and need not be answered given the posture of the case. They make it evident, however, that Bingel and Chen's breach of contract claim against Gonsalves could only be litigated as a single unit, in which the decisions as to all possible damages sought would be made together.

Not only is our conclusion that the instant case against Gonsalves was barred by *res judicata* consistent with the transactional test, it conforms to long-standing precedent in this State respecting breach of contract actions. *See Dugan v. Anderson*, 36 Md. 567, 584–85 (1872) ("It is an ancient and familiar rule of law that only one action can be maintained for the breach of an entire contract, and the judgment obtained by the plaintiff in one suit may be pleaded in bar of any second proceeding."); *Olmstead v. Bach*, 78 Md. 132, 147, 27 A. 501 (1893) (quoting *Dugan, supra*, and holding that "[i]t was the appellant's plain duty to include all that belonged to [the one breach of contract] in the first suit, so that one proceeding and one recovery should settle the rights of the parties."); *Rosenstein v. Hynson*, 157 Md. 626, 628, 147 A. 529 (1929) ("In suing for a part only of the installments in arrears, when he was entitled to sue for all, the plaintiff disregarded the sound and settled rule that a fully accrued cause of action for the breach of a single contract must not be subdivided for the purposes of separate suits against the same party."); *Ex parte Estate of Carlin*, 212 Md. 526, 533, 129 A.2d 827 (1957) ("[T]here is substantial unanimity that even if the contract is divisible, all that is due under it, or by reason of its breach, at the time suit is brought, must then be sued for, or the right to so much as is due but not sued for will be lost.").

---

contract for the sale of land generally restricts the vendor to recovery of the stipulated amount in the event of the purchaser's default, and the vendor is precluded from seeking his actual damages.").

Our analysis is not at an end, however, because Bingel and Chen did in fact attempt to add by amendment of their complaint in the Anne Arundel County Case the actual damages they subsequently claimed and recovered in the instant case. Given that the transactional approach to deciding what constitutes the same claim is premised on modern pleading rules that freely allow amendments, *see* Md. Rule 2–341(c) ("Amendments shall be freely allowed when justice so permits."), we must decide whether the Anne Arundel County court's refusal to grant Bingel and Chen leave to amend their complaint to include actual damages preserves those damages for recovery in a subsequent lawsuit when a claim for them otherwise would be barred by *res judicata*. The parties have not cited, nor have we located, any Maryland case that addresses this question. Gonsalves has directed us to several federal decisions that are on point, however.

In *Prof'l Mgmt. Assocs. v. KPMG, LLP*, 345 F.3d 1030 (8th Cir.2003) (*per curiam*), the plaintiff used its proposed second amended complaint, which the district court had denied leave to file, as the basis for a second lawsuit. Both suits were dismissed by the district court. The district court also denied in the second lawsuit the defendant's motion for sanctions pursuant to Federal Rule of Civil Procedure 11(b).[11] The defendant appealed the denial of that motion, and the plaintiff cross-appealed the dismissal of the action. The Eighth Circuit concluded that the denial of leave to amend in the first action barred the second action, and that the plaintiff should have been sanctioned for filing a frivolous lawsuit:

> The denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action. "Denial of leave to amend constitutes *res judicata* on the merits of the claims which were the subject of the proposed amended pleading." *King v.*

---

11. That Rule provides for sanctions against a party who presents "claims, defenses, and other legal contentions ... [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Fed. R. Civ. Pro. 11(b), (c).

*Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir.1992). This is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness. *Northern Assurance Co. v. Square D Co.,* 201 F.3d 84, 88 (2d Cir.2000); *Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir.1982). Thus, the fact that the district court denied leave to amend because of [the plaintiff's] noncompliance with procedural rules is irrelevant. The denial is a judgment on the merits of the claims in the proposed amended pleading. Thus, the denial of leave to amend in [the first lawsuit] bars the filing of the same pleading in this [second] lawsuit.

As for the Rule 11 issue, we have held a district court abuses its discretion by refusing to sanction a plaintiff and his counsel under Rule 11 for filing and maintaining a frivolous lawsuit when the plaintiff seeks to relitigate claims he had been denied leave to serve against the same defendant in an earlier lawsuit. Given the well-settled law of *res judicata* under the circumstances in this case, [the plaintiffs] counsel should have known [the second lawsuit] was barred by [the first]. The district court thus abused its discretion in declining to sanction [the plaintiff].

*Id.* at 1033–34 (some citations omitted).

In another case, *EFCO Corp. v. U.W. Marx, Inc.,* 124 F.3d 394 (2d Cir.1997), the plaintiff sought leave to amend its New York State court complaint in a lien foreclosure action to add claims of *quantum meruit* and unjust enrichment. The motion was denied on the ground that the plaintiff had failed to attach the necessary supporting affidavit. The New York State court then granted summary judgment to the defendant on the lien foreclosure action. The plaintiff thereafter brought its *quantum meruit* and unjust enrichment claims in a federal suit. The Second Circuit held that the denial of the motion for leave to amend, and the plaintiff's failure to appeal that denial, barred a second action based on those claims:

It is not without significance that [the plaintiff] sought to amend its complaint in state court to assert claims of unjust enrichment and quantum meruit, but the state court denied the motion. [The plaintiff] failed to appeal that decision.

Where a plaintiff's motion to amend its complaint in the first action is denied, and plaintiff fails to appeal the denial, res judicata applies to the claims sought to be added in the proposed amended complaint. *See Restatement* [ (Second) of Judgment], § 25 cmt. b; *see, e.g., Huck v. Dawson,* 106 F.3d 45, 49–50 (3d Cir.1997); *Walton v. Eaton Corp.,* 563 F.2d 66, 71 (3d Cir.1977); *Sendi v. NCR Comten, Inc.,* 624 F.Supp. 1205, 1206–07 (E.D.Pa.1986). In such situations, regardless of the state court's reasons for denying leave to amend, it may fairly be said that plaintiff has failed to avail himself of an opportunity to pursue a remedy in the state-court action, and thus application of res judicata is warranted.

*Id.* at 399–400 (some citations omitted).

Section 25 of the RESTATEMENT, *supra,* cited in *EFCO, supra,* and cited with approval by the Court of Appeals in *Dill v. Avery, supra,* 305 Md. at 210, 502 A.2d 1051, is titled "Exemplification of the General Rule Concerning Splitting." It explains the operation of the rule in section 24 (the transactional test) in situations similar to the present case:

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action.

Comments *b* and *c* to section 25 are also relevant:

*b. Successive actions based on different evidence supporting the same ground.* A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment. It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they

were not alleged in the complaint and an application to amend the complaint came too late. . . .

\* \* \*

c. *Attempts to recover increased damages.* Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury. Accordingly, if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged in the judgment and may not be split. . . . It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in fact to be unexpectedly large and in excess of the judgment. . . .

 We agree with the position of the authorities discussed above that a plaintiff who is denied leave to amend his or her complaint to add additional claims, including a claim for a type of damages not previously sought, is nonetheless barred from raising those claims in a second suit based on the same transaction or series of transactions as the first. We additionally conclude that *res judicata* should apply regardless of whether (a) the trial court's denial of leave to amend was erroneous, (b) the trial court's decision was based on procedural grounds instead of the merits, and/or (c) the adverse party opposed the motion for leave to amend.[12] The proper

---

**12.** The estoppel theory advanced by the Montgomery County court would place defendants in the untenable position of either acquiescing to motions seeking to add new claims against them, no matter how prejudicial, or opposing such motions and forfeiting their right to assert *res judicata* as a defense if those claims later were brought against them in a separate lawsuit. This theory is at odds with our interpretation of Rule 2–341 as freely allowing amendments only to the extent that they do not result in prejudice to the opposing party and undue delay. *See, e.g., Bayly Crossing, LLC v. Consumer Prot. Div.*, 188 Md.App. 299, 328,

mode of redress for a plaintiff aggrieved by the denial of leave to amend is to appeal that ruling upon the entry of a final judgment.

We note in that regard that there is no merit to Bingel and Chen's assertion that *res judicata* did not apply because the Anne Arundel County court's denial of their motion for leave to amend their complaint was merely a "procedural" determination, made without any comment by the court, and must have been "without prejudice" to their pursuing actual damages at a later time because there was no judgment on the merits. Regardless of whether the ruling was made with or without comment, it was made; and once the case concluded after a bench trial, a final judgment existed on the merits. As the cases discussed above make plain, *res judicata* applies in that circumstance to the rulings that preceded the final judgment, unless challenged and overturned on appeal.

Allowing a plaintiff denied leave to amend to thereafter pursue his or her additional claims in a separate action would undermine the judgment of the original trial court and subvert the jurisdiction of appellate courts to review matters raised in or decided by the trial court. *See* Rule 8–131(a). Moreover, the multiple lawsuits based on the same set of facts that would result from the exception to *res judicata* advocated here by Bingel and Chen here would waste judicial resources and potentially lead to inconsistent decisions—outcomes that are directly at odds with the purpose of the *res judicata* doctrine. *See Norville, supra,* 390 Md. at 107, 887 A.2d 1029 (" '[*Res judicata* ] avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " (quoting *Murray Int'l Freight Corp.,* 315 Md. at 547, 555 A.2d 502)). Finally, to allow such an exception to *res judicata* under these circumstances would be inconsistent with

981 A.2d 777 (2009) ("It has long been the policy of Maryland courts to freely allow amendments in order to promote justice. Amendments should not be allowed, however, if they result in prejudice to the opposing party or undue delay." (citations omitted)). More generally, the theory is inconsistent with our adversarial system of justice.

the transactional approach endorsed by the RESTATEMENT, *supra,* and followed in this State.[13]

Accordingly, we shall reverse the judgment of the trial court denying summary judgment in favor of Gonsalves and hold that the Montgomery County Case was barred by *res judicata.*

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. COSTS TO BE PAID BY THE APPELLEES.**

---

**13.** Neither the denial of leave to amend nor an adverse party's opposition to a motion for leave to amend are listed in Restatement, *supra,* section 26 as circumstances constituting an exception to the general rule of section 24.